SCHOTT, Judge.
Defendant pled guilty to attempted second degree murder in violation of LSA-R.S. 14:27 (30.1) and was sentenced to ten years at hard labor. On appeal he claims his sentence was not imposed in compliance with C.Cr.P. Art. 894.1 and was excessive.
In our search of the record for errors patent we have reviewed the guilty plea in accordance with State v. Godejohn, 425 So.2d 750 (La.1983) and concluded that it was freely and voluntarily entered and that defendant understood the consequences of his plea even though he expressed during his colloquy with the judge a denial that he committed the crime.
At the outset of the hearing on the plea the trial judge informed defendant she had before her his form waiver of constitutional rights, told him he was charged with attempted second degree murder, and asked if he understood what she was talking about. Defendant answered, “yes.” She then carefully explained and asked if he understood that he had the rights to trial by judge or jury and to appeal and by pleading guilty he was waiving these rights. She next told him she may impose a sentence of fifty years and by his plea he was waiving his right to confront the state’s witnesses and to call his own. He stated he understood all this. The following colloquy then ensued:
BY THE COURT:
*161 What are the facts of this case, Mr. Netterville?
BY MR. NETTERVILLE:
The facts are that Mr. Oliver went into a gas station. Let me give you it perfectly accurate. On June 29, 1982, Mr. Oliver went into a Texaco gas station at North Claiborne and Franklin Avenue and a discrepancy arose as to how much gasoline he got and Mr. Oliver felt he was short-changed three cents worth of gasoline and he confronted the cashier about this. After speaking with the cashier, the assistant manager or manager, Clarence Harold, got involved in the dispute and there was an argument and apparently, he had a discussion and during that discussion in the presence of about seven or eight people who were in the store or about the place, saw Mr. Oliver withdraw a gun and shot Mr. Harold, the manager, and it hit him on the side of th neck causing injury to his neck. He then ran out and he went to the Fifth District Police Station where he turned himself in to Officer Wayne Krieder.
BY THE WITNESS:
I didn’t run.
BY THE COURT:
Let Mr. Netterville finish.
BY MR. NETTERVILLE:
Mr. Oliver departed the place and went directly to the Fifth District Police Station, walked in and approached Officer Wayne Krieder and said, “I just shot someone.” Here is the gun and turned the gun over to the Officer with five loaded bullets and one spent bullet in the gun.
BY THE COURT:
Is that Correct what Mr. Netterville said?
A The way they said it was all wrong.
Q All wrong? None of that really happened?
A The way they said it, one thing happened when I shot the gun. That is the only thing that happened.
Q You did shoot the gun though?
A Yes, mam.
Q And you hit Mr. Harold?
A I grazed him because I wasn’t trying to shoot him at the time when I pulled the gun.
Q What did you intend to do with the gun?
A When I pulled the gun out, I went— he called me an old crazy fool and that is what made me pull the gun because it felt like lightening struck my head and I went to move the gun over and shoot on the side of him. That is all, just to scare him.
Q Is what you are telling me you wish to plead guilty to this offense which is attempted second degree murder, is that correct?
A Second degree murder? I wasn’t trying to kill the man.
Q All I am trying to ask you is that what you want to plead guilty to? I am going to tear this thing up and go to trial, Mr. Oliver if that is what you want to do. I don’t want to have an argument with you. I am only asking you if that is what you want to do. This is the last chance you are getting at this. I am not going through this again.
A I plead guilty to it.
Q You wish to plead guilty and think that is in your best interest?
A I hope so.
Q Are you satisfied with the handling of this case with your attorney and the way he has represented you?
A Yes.
Q Do you understand you are waiving your right against self incrimination? That is, to say between the time that you were picked up and during the trial, you could have remained absolutely silent and said nothing. Neither the jury or the Court could not have held it against you if you did not testify. You understand that?
A Yes.
*162 Q Now, you told us you shot Mr. Harold? You hit him with a bullet from the gun, didn’t you?
A Yes.
Q And you wanted to plead guilty to this charge so what you really have done is given up your right to remain silent, is that correct?
A Yes.
Q You understand if you had chosen to go to trial, you had the right to have competent counsel represent you and since you were unable to pay for your own attorney, Mr. Johnson was representing you. I want to tell you he is a fine attorney. If he was unable to represent you, I would have appointed someone else. This is the end of the line in this case for this charge. You understand that?
A Yes.
Q I made an agreement with Mr. Johnson. I told him I would permit him to have you sentenced at another time. I would ask for the pre-sentence investigation. I would also ask for a sentencing hearing. In other words, the sentencing is going to be delayed. You understand that?
A Yes.
Q I have not promised you anything else whatsoever?
A No.
Q Is that true and correct?
A Yes.
Q Has anyone forced, threatened or in-timitated you into making this plea?
A No.
Q Did you place your initials by every paragraph where you are supposed to, Mr. Oliver?
A I did.
Q Did you sign the bottom?
A I did.
BY THE COURT
Mr. Johnson, did you sign on the bottom?
BY MR. JOHNSON:
Yes, I did, Your Honor.
BY THE COURT:
Sign it one more time on the bottom, Mr. Oliver, certifying that I have given you all of your rights and you have waived them and you understand them. Thank you. The Court finds that the plea has been freely and voluntarily made and that the defendant understands the consequences of his acts and I have dated it June 29, 1983. The Court is going to order a pre-sen-tence investigation.
Although defendant seemed to equivocate when he was asked whether he intended to kill the victim he expressed a clear intention to plead guilty to the crime charged and willingness to accept the penalty. While most pleas of guilty consist of both a waiver of trial and express admission of guilt, the latter element is not a constitutional requisite to the imposition of criminal penalty. North Carolina v. Alford, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970). An individual accused of crime may voluntarily, knowingly, and understandingly consent to the imposition of a prison sentence even if he is unwilling to admit his participation in the acts constituting the crime. North Carolina v. Alford, supra., State v. Thomas, 434 So.2d 530 (La.App. 2d Cir.1983). We have concluded that defendant’s guilty plea was properly entered and was accepted by the trial court without error.
Defendant’s argument against his sentence is without merit. The sentencing transcript shows that the trial judge had the benefit of a pre-sentence investigation from the Department of Probation and Parole and she considered many of the guidelines contained in C.Cr.P. Art. 894.1 without specifically referring to or reading from the article. The report showed that defendant was convicted of obstructing the mail and forgery of a treasury check in 1961 for which he spent two years in a federal penitentiary. Additionally, the report disclosed that defendant was arrested for illegally carrying a weapon in 1961 and again in 1980 with no disposition given for the former offense and a nolle prosequi in Municipal Court for the latter. Finally, the *163 report showed that defendant was convicted of aggravated battery and assault in 1981 for which he served thirty days in Parish Prison.
The judge was impressed by the defendant’s record in combination with the present offense which consisted of his shooting the victim in the neck following an argument over a three-cent overcharge for gas. The judge concluded that defendant has a bad temper and a propensity to use guns quite readily. In imposing a ten year sentence which is on the low side of the range for attempted second degree murder she exercised sound discretion in meting out the sentence.
Accordingly, the conviction and sentence are affirmed.
AFFIRMED.