543 So.2d 585 (1989)
STATE of Louisiana
v.
Alexander L. TALBERT.
No. KA 8218.
Court of Appeal of Louisiana, Fourth Circuit.
April 27, 1989.
*586 Harry F. Connick, Dist. Atty. and R. Jeffrey Bridger, Asst. Dist. Atty., New Orleans, for plaintiff.
Bernard Jack Usprich, New Orleans, for defendant.
Before SCHOTT, C.J., and ARMSTRONG and PLOTKIN, JJ.
ARMSTRONG, Judge.
Defendant, Alexander Talbert, was indicted for attempted second degree murder, a violation of La.R.S. 14:27 and R.S. 14:30.1. Following a trial by jury, defendant was found guilty as charged. He was sentenced to serve twenty-five years at hard labor without benefit of probation, parole, or suspension of sentence. Defendant now appeals raising three assignments of error.

FACTS
On the night of February 5, 1986, defendant shot and wounded David White. The two men had been flambeaux carriers in a Mardi Gras parade and the shooting took place at the disbanding area near the Municipal Auditorium.
Officer Harold Blappert was assigned to flambeaux duty that evening. He and another officer maintained order during the hiring and equipping of the flambeaux carriers at the beginning of the parade route. After the last flambeaux carrier enters the parade, the officers drive to the disbanding area where the flambeaux carriers turn in their equipment and receive their pay. Officer Blappert testified that the flambeaux carriers are subjected to a search for weapons and contraband before the parade. He recalled that both the defendant and the victim were searched before the parade and no weapons or contraband were discovered.
After the parade, Officer Blappert watched while the flambeaux carriers turned in their equipment and torches. He heard a shot fired about fifteen feet from where he was standing. He did not see who fired the shot, but turned to see the defendant pointing a gun at someone or something. The defendant began to run and fired two more shots. In front of him ran David White. A crowd of people opened up when they saw the defendant chasing the victim with a gun. Officer Blappert drew his service revolver and began to run after the defendant. The victim collapsed in the street suffering from a single gunshot wound to his shoulder. Officer Blappert chased down the defendant and recovered from him a .32 caliber revolver containing three spent casings, one empty chamber, and two live rounds.
The defendant was advised of his rights and informed the officer that he knew them. While Officer Blappert was conferring with other officers, trying to determine how many shots had been fired, the defendant interrupted and said he had only fired three shots. He was again advised of his rights and said he understood them, but wished to continue with his explanation. He stated that the victim attacked him on the parade route. He said he didn't have a gun with him at the beginning of the parade, but left the parade route and walked to his nearby residence to get one after he *587 was attacked. It is not clear if he rejoined the parade or simply went to the disbanding area.
The victim testified that Officer Blappert searched him before the parade. He and the defendant had two confrontations over some quarters thrown into the street by spectators. They pushed each other and the defendant punched him in his mouth. The victim had a short stick which most flambeaux carriers carry to tighten their belts. The victim hit the defendant with his stick, and five to ten minutes later the defendant "left." At the disbanding area, he saw the defendant sitting on a wall. Defendant jumped off of the wall, walked to within three to four feet of the victim, and without saying anything, shot him. The victim ran from the defendant and collapsed in the street, lapsing into unconsciousness.
Defendant testified that he was not searched prior to the parade and had the gun in his pocket during the parade. He got into an argument with a flambeaux carrier named Michael Warren, a friend of the victim's, over some money tossed in the street. He said the victim came over, struck him in his head with a stick, and told him that he was going to rob him when he reached the end of the parade. Defendant denied leaving the parade route to get the gun from his residence. At the end of the parade, defendant and another flambeaux carrier, Vonkeith Foster, were paid and the victim told him to give him his money "before something happened." Then, the victim allegedly hit him over his right eye with a stick. He pulled out his gun and shot the victim. The victim allegedly hit him again, so he fired two more shots at him. Defendant denied telling Officer Blappert that he left the parade route and went home to get the gun. He claimed to have overheard another officer ask Blappert if he had searched the defendant [before the parade]. Blappert said no and the other officer said that he'd better "clean up behind [himself]." Later, Officer Blappert allegedly questioned the defendant as to where he lived and how close it was to the parade route.
Michael Warren, a flambeaux carrier in the parade, testified that he had not been searched. He said that he and the defendant had not really argued because they were friends but that the victim came over and hit the defendant with a stick. He did not see the defendant leave the parade route. On cross-examination, he admitted having spoken with a woman with the District Attorney's office. He told her he heard the shots, but did not wish to be a witness because he didn't want to get involved.
Darnell Lewis was a spectator at the parade. He saw the defendant and another person in a "little scuffle." The victim jumped in and struck the defendant, bloodying his forehead. He followed the parade to the end and said the defendant didn't leave the parade route. Robert Gilmore was a friend of the defendant and also knew the victim. He was also a spectator at this parade. Near Lee Circle, he saw some scuffling among the flambeaux carriers after some change was thrown into the street. He saw the victim strike the defendant. Afterwards, the defendant walked from where he was parading behind a float to the front of the float. Gilmore walked all the way to the end of the parade and did not see the defendant leave the parade route. Gilmore and Lewis did not see the shooting but heard the shots.
Vonkeith Foster had known the defendant for a long time and was a flambeaux carrier in the parade with him. Foster stated that he had not been searched before this parade nor had he ever been searched in his five years as a flambeaux carrier. He also stated that Officer Blappert had not searched anyone before the parade. Near Lee Circle he saw the defendant and Michael Warren get into a confrontation, and saw the victim hit the defendant with a stick, "busting" his eye. The victim said something to him about the defendant, so Foster and the defendant walked up further in the parade. He claimed that he stayed with the defendant until the end of the parade and said the defendant never left the route. After they were paid at the end of the parade, the victim hit the defendant with the stick *588 again. Foster knew the defendant had a gun with him so he ran and did not see the shooting. Foster admitted to having been convicted of a felony.
The defendant's mother, who lived next door to where the defendant claimed to have lived, testified that she had not seen her son from 3:00 p.m. February 5th until the next day. Patricia Edwards, an Assistant District Attorney, testified that she interviewed Michael Warren on the telephone during her screening of the charge against defendant. He told her that, as he and the victim were going to get their pay checks after the parade, they saw the defendant sitting on a wall. He got up and went to within five feet of the victim and shot him. He fired two more shots and began to chase the victim. Ms. Edwards also testified that she saw Warren talking with the victim in the hallway outside of the courtroom on the day of trial. She overheard him say to the victim that he "knew what he saw" but was sorry he just couldn't help him anymore; he had changed his mind.
Based upon this evidence the jury found the defendant guilty of attempted second degree murder.

Assignment of Error No. 1
By his first assignment of error, the defendant argues that the evidence was insufficient to support a conviction for attempted second degree murder.
Our review of this assignment of error is limited to determining whether, viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found that the essential elements of the crime charged were proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed 2d 560 (1979). This standard of review applies to both direct and circumstantial evidence. State v. Rosiere, 488 So.2d 965 (La.1986); State v. Garcia, 483 So.2d 953 (La.1986); State v. Banks, 496 So.2d 1099 (La.App. 4th Cir.1986).
La.R.S. 14:30.1 defines second degree murder in pertinent part as:
"the killing of a human being ... when the offender has a specific intent to kill or inflict great bodily harm ..."
La.R.S. 14:27(A) states in part:
"Any person who, having a specific intent to commit a crime, does or omits an act for the purpose of and tending directly toward the accomplishing of his object is guilty of an attempt to commit the offense intended; and it shall be immaterial whether, under the circumstances, he would actually have accomplished his purpose."
While a conviction for second degree murder can be obtained by showing that the defendant had the specific intent to kill or inflict great bodily harm, a conviction for attempted second degree murder requires a showing that the defendant had the specific intent to kill and committed an act tending to accomplish that purpose. State v. Strother, 362 So.2d 508 (La.1978); State v. Butler, 322 So.2d 189 (La.1975); State v. Banks, 496 So.2d 1099 (La.App. 4th Cir.1986).
La.R.S. 14:10(1) defines specific intent as:
"that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act."
Specific intent can be proven by direct evidence or it may be inferred from the circumstances of the case. La.R.S. 15:445; State v. Noble, 425 So.2d 734 (La.1983); State v. Boyer, 406 So.2d 143 (La.1981).
The uncontroverted evidence showed that the victim and defendant had an altercation on the parade route. Following the parade, the defendant shot the victim in the shoulder area and fired two more shots at him. The testimony of the victim, and the substance of Michael Warren's statement as testified to by Assistant District Attorney Edwards, established that the defendant jumped off of a wall he was sitting on, and unprovoked, without speaking, went to within three to five feet of the victim and shot him. This was approximately forty-five minutes after the altercation on the parade route. Officer Blappert testified that the defendant admitted that *589 he left the parade route and went to his residence to get the gun with which he later shot the victim. He apparently sat on the wall and waited for the victim.
Viewing the direct and circumstantial evidence, in a light most favorable to the prosecution, we find that any rational trier of fact could have found that the defendant had the specific intent to kill the victim when he shot him and then shot at him two more times, thereby committing an act or acts tending to accomplish that purpose.

Assignment of Error No. 2
By his second assignment of error, the defendant contends that in its closing argument the State improperly implied or gave the impression that the defendant had a criminal record, and improperly placed the defendant's character at issue. The prosecutor stated:
"I submit that Alexander Talbert is the same kind of man as Von Foster, who burglarizes elementary schools and carries a gun. They carry a gun together."
La.C.Cr.P. art. 774 limits the scope of closing argument "to evidence admitted, to the lack of evidence, to conclusions of fact that the State or defendant may draw thereform, and to the law applicable to the case."
Vonkeith Foster testified at trial that he had been convicted of the simple burglary of an elementary school and of being a convicted felon in possession of a firearm. He said he was a friend of the defendant's and that he knew the defendant was carrying a gun. Therefore, we cannot say that the State's closing argument went beyond the evidence admitted or conclusions of fact that could have been drawn therefrom.

Assignment of Error No. 3
By this last assignment of error, the defendant argues that his sentence of twenty-five years at hard labor was excessive. La.R.S. 14:27(D)(1) provides that the penalty for attempting to commit a crime punishable by life imprisonment shall be imprisonment at hard labor for not more than fifty years. The crime of second degree murder is punishable by mandatory life imprisonment. Defendant could have been sentenced up to fifty years for his conviction of attempted second degree murder. However, a sentence may be excessive and in violation of La. Const. Art. I, § 20 even though it is within statutory limits. State v. Cann, 471 So.2d 701 (La. 1985); State v. Francosi, 511 So.2d 1181 (La.App. 4th Cir.1987).
A sentence may be unconstitutionally excessive if it is "grossly out of proportion to the severity of the crime" or "is nothing more than the purposeless imposition of pain and suffering." State v. Brogdon, 457 So.2d 616 (La.1984), cert. denied, Brogdon v. Louisiana, 471 U.S. 1111, 105 S.Ct. 2345, 85 L.Ed.2d 862 (1985); see also State v. Francosi, supra.
It has been held that, in order to ensure an adequate review by an appellate court, there must be an indication in the record that, in sentencing the defendant, the trial court considered both the aggravating and mitigating factors set forth in La.C.Cr.P. art. 894.1. State v. Francosi, supra. At the sentencing hearing in the case at bar, the trial judge stated that he would "adopt as a factual basis the jury's verdict of Guilty as Charged for the crime of Attempted Second Degree Murder." He then sentenced the defendant "under the provisions of C.Cr.P. art. 894.1, Subparagraphs (a),(b), and (c)."
The failure of the trial judge to specifically enumerate for the record the factors he considered and the basis for imposing the sentence as required by La.C.Cr.P. art. 894.1 does not, however, render a sentence invalid. State v. Smith, 430 So.2d 31 (La. 1983); State v. Conger, 526 So.2d 431 (La. App. 4th Cir.1988), writ denied, 488 So.2d 199 (La.1986). An appellate court may uphold a sentence if the record (1) "clearly illuminates the sentencing choice," and (2) "reflect[s] that the sentence is not excessive." State v. Smith, supra.
The defendant armed with a gun, waited for the victim after the parade. He coolly walked to within three to five feet of the victim and shot him in his shoulder area. *590 He chased him and fired two more shots at him. The shooting occurred in an area crowded with Mardi Gras participants. Even though the defendant was apparently a first offender, we feel the record clearly illuminates the sentencing choice.
As an aid to determining whether the twenty-five year sentence was excessive, we will consider the sentences imposed for the same crimes in this and other appellate districts.
In State v. Smith, 511 So.2d 852 (La. App. 4th Cir.1987), this court held the maximum sentence of fifty (50) years for attempted second degree murder not excessive despite ongoing psychological problems of the defendant.
In State v. Tatum, 506 So.2d 584 (La. App. 4th Cir.1987), this court upheld forty-five (45) years for attempted second degree murder, to be served consecutively to forty-five (45) years for armed robbery. The defendant had pointed a gun directly at a service station attendant and fired, but his bullet was stopped by bullet-proof glass.
In State v. Oliver, 478 So.2d 159 (La. App. 4th Cir.1985), this court upheld a ten (10) year sentence for attempted second degree murder. The defendant had an extensive criminal record, and shot the victim in the neck over a three-cent (3¢) overcharge for gas.
In State v. Simmons, 454 So.2d 408 (La. App. 4th Cir.1984), this court upheld the maximum sentence of fifty (50) years for attempted second degree murder. The defendant had had a gun in his possession at least four (4) times in the past and had used it three (3) times. He seriously injured at least two (2) and killed one (1) person.
Considering these sentences, we are unable to say that the defendant's sentence is either grossly out of proportion to the severity of the crime or nothing more than the purposeless imposition of pain and suffering. The sentence, one-half of the maximum the defendant could have received, is not constitutionally excessive.
Defendant also cites as error the portion of his sentence denying him the benefit of probation, parole, or suspension of sentence. Defendant is correct. La.R. S. 14:27(D)(1) provides that the sentence for attempted second degree murder is imprisonment at hard labor for not more than fifty years. It does not allow for the denial of the benefit of probation, parole, or suspension of sentence. Accordingly, we will amend defendant's sentence to delete that portion denying him those benefits.
For the foregoing reasons, we affirm the conviction of the defendant and amend his sentence to delete that portion which denies him the benefit of probation, parole, or suspension of sentence.
CONVICTION AFFIRMED, SENTENCE AMENDED, AND AS AMENDED, AFFIRMED.