593 So.2d 704 (1991)
STATE of Louisiana
v.
Kevin A. SCOTT.
No. 90-KA-0904.
Court of Appeal of Louisiana, Fourth Circuit.
December 30, 1991.
*706 Harry F. Connick, Dist. Atty., Jack Peebles, Asst. Dist. Atty., New Orleans, for plaintiff.
Sherry Watters, Orleans Indigent Defender Program, New Orleans, for defendant.
Before BYRNES, LOBRANO and ARMSTRONG, JJ.
ARMSTRONG, Judge.
The defendant, Kevin Scott, was indicted by a grand jury with two counts of aggravated rape, a violation of R.S. 14:42, two counts of aggravated burglary, a violation of R.S. 14:60, and three counts of simple burglary of an inhabited dwelling, a violation of R.S. 14:62. He pleaded not guilty to all counts. His motions to suppress the identification, confession and evidence were denied. After a trial a twelve-member jury found the defendant guilty as charged on all counts except for one count of residential burglary on which he was acquitted. He was sentenced to life imprisonment at hard labor without benefit of probation, parole, or suspension of sentence on the two aggravated rape counts; to thirty years at hard labor on the two aggravated burglary counts; and to twelve years at hard labor on the two simple burglary counts. All of the sentences are to run consecutively to each other.
The record reflects that shortly after midnight on September 1, 1989, Roland Galatas was returning to his apartment building at 7819 St. Charles Avenue when he saw defendant coming out of the building. Galatas asked him who he was, defendant said that he lived in the building. Galatas pulled out his gun and told defendant that he knew defendant did not live there. Defendant then said that he was visiting Susan Bussel and named an apartment. Galatas said that he knew Ms. Bussel did not live in the named apartment. Galatas also remembered that several days earlier another tenant, P.M. (because this is a rape case, the victim's name will not be used), had been raped and that defendant fit the description of the rapist. Galatas ordered defendant to go into his apartment and to sit on storage crates in the living room. Galatas then called the police.
Detectives Glenn Huth and Ned Gonzales responded and arrived at Galatas' apartment. They advised the defendant of his rights and that he was a suspect in the rape. Defendant told them that he was visiting his friend Susan and gave the officer a set of keys. One of the keys fit the door lock to Ms. Bussel's apartment, but another key did not fit the deadbolt lock. Defendant also gave them three photographs. Ms. Bussel was in two of the pictures. Defendant was allowed to leave, and he had no objections to the detectives keeping the keys and the photographs. A few days later, Galatas was cleaning his apartment; and when he moved the storage crates in his living room, he found two pairs of women's panties. Galatas stated that he had kept defendant under constant watch while defendant sat on the crates, and that he did not see defendant place any panties behind them.
Officer Joseph Lorenzo was investigating the rape of P.M. which had occurred at 7819 St. Charles on August 23. He met with Gonzales who gave him the keys and the photographs. Lorenzo showed the three photographs to the landlady, and she identified Ms. Bussel in two of the photographs. She identified the third photograph as that of Yumiko Tanaka, a tenant of the adjacent apartment building at 7825 *707 St. Charles. The key that did not fit the deadbolt to Ms. Bussel's apartment fit the lock to the laundry room for the building.
Lorenzo interviewed Ms. Tanaka, and she identified the photograph as being of her. She looked in a photo album which she kept on a bookshelf and found that picture missing. She also identified one of the pairs of panties found in Galatas' apartment as hers because of the Japanese writing on the label. She did not know anything was missing until she spoke with the police. She denied knowing defendant, letting him into her apartment, or giving him the photograph.
Ms. Bussel testified that she had spoken briefly with defendant on prior occasions on the street. She said that she had seen him in the apartment building once and that he told her he lived there. She stated that she had never let him into her apartment or given him the two photographs of her or any of her undergarments. She identified the other pair of panties found in Galatas' apartment as hers because the panties were part of a set. She said that she did not know anything was missing from her apartment until she spoke with the police.
P.M. testified that at approximately 4:30 a.m. on August 23, she was awakened by a man holding something to her throat and who then raped her. She picked out defendant and another man from a photographic lineup, but at trial she was unable to identify defendant as the one who raped her.
Detective Cindy Patterson was investigating the rape of D.W. on June 3, 1989, at D.W.'s apartment at 7212 Maple Street. She put defendant's picture in a photographic lineup, and D.W. picked him out. D.W. had been shown four previous photographic lineups, but had not identified any one as her assailant.
D.W. testified that she was awakened by a man holding a knife to her neck. She pushed the knife away and sustained a cut on her hand and neck. The man raped her several times, and she noticed that he wore rubber gloves.
Lorenzo arrested defendant for the burglaries of Ms. Bussel's and Ms. Tanaka's apartments. Lorenzo stated that he told defendant that was the reason for his arrest and advised him of his rights. Defendant asked why the rape investigation unit was handling the burglary investigation and he was told by Officer Cindy Burkhart that it was because the burglaries occurred in the same apartment complex where there had been a sexual assault. He then asked if the officers were insinuating that Ms. Bussel had been attacked. Burkhart told him that she had not and asked him about the keys and the photographs and about his relationship with Ms. Bussel. Defendant said that they were a gift and that Ms. Bussel was just a friend. The officers then told defendant that Ms. Bussel denied giving him those things, and defendant said that Ms. Bussel was telling the truth. He confessed to taking the pictures out of her apartment while she was absent. He further admitted entering Ms. Tanaka's apartment and taking a picture. Additionally, he admitted entering a third apartment and stealing a pair of panties. Defendant was then asked whether he had ever entered the apartment at the back of the building where the assault had occurred. Defendant stated that he had and that P.M. was not supposed to be there. He confessed to raping her. None of the statements had been recorded up to that point, but Burkhart asked defendant if he objected to having his statement taped. He had no objections, and he repeated his confession.
Both defendant's apartment and locker at work were searched. The police seized numerous pairs of rubber gloves, several sets of keys, a pair of panties, several photographs, a sorority magazine, and other items.
A review of the record reveals an error patent as to the sentences imposed for the two counts of simple burglary of an inhabited dwelling. Under R.S. 14:62.2, the first year of the sentence is to be served without benefit of probation, parole, or suspension of sentence. The trial court failed to impose this condition on the first year of the sentences for the two counts; thus, the sentences are illegally lenient. A sentencing *708 error favorable to the defendant cannot be considered on appeal where it is not raised as error by the defendant or the State. State v. Fayard, 537 So.2d 347 (La. App. 4th Cir.1989), writ denied 541 So.2d 871 (La.1989), reconsideration denied 543 So.2d 10 (La.1983).
ASSIGNMENT OF ERROR NO. 1:
In his first assignment of error, defendant complains that the State failed to prove beyond a reasonable doubt that he committed the simple burglaries of the apartments of Susan Bussel and Yumiko Tanaka. He argues that the State failed to prove that there was an unauthorized entry into those apartments or that he was the one who made the unauthorized entry beyond a reasonable doubt. He contends that the circumstantial evidence failed to exclude every reasonable hypothesis of innocence since neither Ms. Bussel nor Ms. Tanaka were aware that their respective apartments had been entered by a third person.
The standard for reviewing a claim of insufficient evidence is whether, after viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found the essential elements of the offense proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Fuller, 414 So.2d 306 (La. 1982). When the conviction is based on circumstantial evidence, such evidence must exclude every reasonable hypothesis of innocence. R.S. 15:438; State v. Camp, 446 So.2d 1207 (La.1984). This is not a stricter standard of review, but it is an evidentiary guide for the jury when it considers circumstantial evidence. State v. Porretto, 468 So.2d 1142 (La.1985). If a rational trier of fact reasonably rejects the defendant's hypothesis of innocence, that hypothesis fails; and unless another hypothesis creates reasonable doubt, the defendant is guilty. State v. Captville, 448 So.2d 676 (La.1984).
The State proved beyond a reasonable doubt that defendant committed the burglaries of the apartments of Ms. Bussel and Ms. Tanaka. The state had to prove defendant made an unauthorized entry into an inhabited dwelling or apartment with the intent to commit a felony or theft therein. R.S. 14:62.2. Both women testified that they did not allow defendant to enter their respective apartments and that the photographs and panties were theirs and were missing. Defendant admitted to entering the apartment without the consent of either woman and to taking the photographs. No reasonable hypothesis of innocence creates reasonable doubt. This assignment of error is without merit.
ASSIGNMENT OF ERROR NO. 2:
In his second assignment of error, defendant complains that the trial court erred in denying his motion to suppress his confession. He argues that his confession should have been suppressed because he was not fully advised as to the reason for his arrest in that he was not advised that he was a suspect in the rape of P.M. and thus his admission to that rape should have been suppressed.
The state has the burden of proving beyond a reasonable doubt that a confession was freely and voluntarily given. State v. Burkhalter, 428 So.2d 449 (La. 1983); State v. Chevalier, 458 So.2d 507 (La.App. 4th Cir.1984). When the accused is in custody, a prerequisite to the admissibility of a confession is that the accused has been advised of his constitutional rights and that he has intelligently waived those rights. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); State v. Benoit, 440 So.2d 129 (La. 1983); State v. Chevalier, supra. The trial court's determination that a confession was freely and voluntarily made is entitled to great weight and will not be disturbed unless it is unsupported by the evidence. State v. Benoit, supra.
Defendant cites State v. Burge, 486 So.2d 855 (La.App. 1st Cir.1986), in support of his contention that he should have been informed that he was a rape suspect prior to his confessing to the rape of P.M. In Burge, four inmates in a dormitory at Angola had been stabbed, and the defendant was found holding a knife. As he was *709 being led away by officers, the defendant stated that he had stabbed them all. The defendant was handcuffed and placed in custody. Without advising the defendant of his Miranda rights, an officer asked why he stabbed a fellow inmate, and the defendant replied that he had stabbed four inmates. After this, defendant was asked by the warden what had happened and he told the warden he had stabbed the four men. Defendant was subsequently given the Miranda warnings, and he gave a written confession. The second and third statements were not used at trial. The defendant argued that this written confession was inadmissible as not freely and voluntarily made because the prison officers did not tell him that three of the four inmates had died prior to his giving the confession, and this constituted a form of inducement or coercion. The First Circuit held that the confession was admissible. The court stated that the central determination of voluntariness was whether the statement was the product of the defendant's free and rational choice based on an examination of the totality of the circumstances, citing Edwards v. Arizona, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981). The court found that the defendant had to have been aware of the illegal nature of his actions and that the defendant understood his rights prior to waiving them.
Based on the totality of the circumstances, the trial court did not err in denying defendant's motion to suppress his confession. Defendant was aware of the investigation of the rape of P.M. since he was so informed by Huth and Gonzales on September 1, several days before his interrogation by Lorenzo and Burkhart. This fact and his asking Lorenzo and Burkhart why the rape investigations unit was asking him about the burglaries and their telling him they were involved because of the previous sexual assault at the apartment building show defendant was well aware that he was a suspect of the rape at that building. Defendant made a free and rational choice to confess to the rape of P.M., and his confession was thereby admissible.
This assignment of error is without merit.
ASSIGNMENT OF ERROR NO. 3:
In his third assignment of error, defendant complains that the trial court erred in imposing an excessive sentence in that he was given the maximum sentence on each count and that the sentences were imposed consecutively. He argues that neither his record nor the circumstances of the crimes warrant the imposition of maximum, consecutive sentences. He points to his relatively young age, the fact that he was employed, that the victims were not physically injured, and that neither Ms. Bussel nor Ms. Tanaka were even aware that their apartments had been burglarized.
The trial judge stated that he was sentencing defendant pursuant to Articles 883 and 894.1. He noted that defendant was twenty-six years old and was employed as a cook's helper. The trial judge stated that the burglaries were of students' apartments which took place over a three month period and that defendant had carefully "cased" the apartments. As to the two rapes, the trial judge noted that the rapes were at knife-point and under threat of death and that one of the victims was cut. The trial judge stated: "suffice it to say that this Court is convinced that the defendant is an extremely dangerous and violent individual who should never be released from prison." The trial judge then imposed sentence and ordered that the sentences were to be served consecutively.
C.Cr.P. art. 883 provides:
If the defendant is convicted of two or more offenses based on the same act or transaction, or constituting parts of a common scheme or plan, the terms of imprisonment shall be served concurrently unless the court expressly directs that some or all be served consecutively. Other sentences of imprisonment shall be served consecutively unless the court expressly directs that some or all of them be served concurrently. In the case of the concurrent sentence, the judge shall specify, and the court minutes shall reflect, the date from which the sentences are to run concurrently.
*710 Defendant was convicted of six separate offenses, but they were not all based on the same act or transaction and did not constitute part of a common scheme or plan. Rather, there were four separate acts, to wit: 1) the aggravated burglary and aggravated rape of D.W. on June 3, 1989; 2) the aggravated burglary and aggravated rape of P.M. on August 23, 1989; 3) the simple burglary of Ms. Bussel's apartment; and 4) the simple burglary of Ms. Tanaka's apartment. Thus, under Article 883 the trial court was not required to make the sentences concurrent as to the four separate acts. State v. Smith, 557 So.2d 393 (La.App. 4th Cir.1990). That is, defendant cannot complain that the trial court erred in imposing two consecutive life sentences for the aggravated rapes, two consecutive thirty year sentences for the aggravated burglaries, and two consecutive twelve year sentences for the simple burglaries which are to run consecutively to the other sentences.
But when consecutive sentences are imposed for crimes arising out of a single transaction, the trial court must articulate particular justification for such a sentence beyond a mere articulation of the standard sentencing guidelines set forth in C.Cr.P. art. 894.1. State v. Messer, 408 So.2d 1354 (La.1982); State v. Jackson, 552 So.2d 445 (La.App. 4th Cir.1989); State v. Smith, 539 So.2d 993 (La.App. 4th Cir. 1989). However, consecutive sentences for crimes arising out of the same act are not per se excessive if the trial court considers other appropriate factors in imposing the sentence. State v. Ortego, 382 So.2d 921 (La.1980), cert. den. sub nom. Ortego v. Louisiana, 449 U.S. 848, 101 S.Ct. 135, 66 L.Ed.2d 58 (1980).
State v. Smith, supra, 539 So.2d at 996, set forth those factors as follows:
[2] Factors to be considered by the sentencing court when imposing consecutive sentences include those enumerated in LSA-C.Cr.P. art. 894.1, and whether the defendant poses an unusual risk to the safety of the public. State v. Piazza, 496 So.2d [1229] at 1232 [La.App.1986] [factors to be considered include the multiplicity of acts, lack of remorse, and the risk to the public]; State v. Parker, 503 So.2d 643 (La.App. 4th Cir.1987) [other factors include defendant's criminal history, the dangerousness of the offense, the viciousness of the crimes, the harm done to the victim, the potential for defendant's rehabilitation, and the danger posed by the defendant to the public]; State v. Lighten, 516 So.2d [1266] at 1268 [(La.App.1987) ]; State v. Tomlin, 478 So.2d [622] at 624 [ (La.App.1985) ]; State v. Piazza, 496 So.2d at 1232. Moreover, Article 894.1 requires that the sentencing court state for the record its considerations and its basis for the sentence. State v. Williams, 445 So.2d [1171] at 1182 [(La.1984)]. See also State v. Tomlin, 478 So.2d at 624 [the sentencing court noted for the record defendant's prior arrests, his record of harassing teen-age girls, his poor work record, and the serious likelihood of his committing further crimes]; State v. Piazza, 496 So.2d at 1232 [the sentencing court noted that defendant committed the crimes over an extended period of time and the acts were clearly premeditated. Those considerations, along with defendant's refusal to admit the criminality of his acts led the court to conclude that a lesser sentence would create a substantial risk that defendant upon release, would perpetuate similar acts upon the unsuspecting public]; State v. Lighten, 516 So.2d at 1268 [defendant's criminal history as a repeat offender indicated that defendant imposed a risk to the safety of the public so that his consecutive sentences were supported by the record].
In sentencing defendant, the trial judge referred to the circumstances of the crimes and noted the violence to the two rape victims. However, the record does not establish any particular justification for the imposition of consecutive sentences for the crimes that arose out of a single course of conduct. In State v. Smith, 557 So.2d 393 (La.App. 4th Cir.1990), this court vacated the consecutive sentences imposed on the defendant where the trial court stated that sentences were consecutive without *711 further elaboration after imposing the individual sentences. The present case is like Smith in that the trial judge merely stated at the end of the sentencing hearing that all sentences were to be served consecutively. Accordingly, the case should be remanded to allow the trial court to articulate more sufficiently and completely the reasons for making the sentences consecutive.
Defendant also complains that each of the individual sentences are excessive and not supported by the record. La. Const. Art. 1, section 20 prohibits the imposition of excessive punishment; and although a sentence is within the statutory limits, the imposition of that sentence may still violate a defendant's constitutional right against excessive punishment. State v. Cann, 471 So.2d 701 (La.1985); State v. Telsee, 425 So.2d 1251 (La.1983); State v. Bell, 543 So.2d 965 (La.App. 4th Cir.1989). A punishment is constitutionally excessive if it makes no measurable contribution to acceptable goals of punishment and is nothing more than the purposeless imposition of pain and suffering and is grossly out of proportion to the severity of the crime. State v. Telsee, supra. However, a trial judge has wide discretion in the imposition of a sentence; and a sentence should not be set aside as excessive in the absence of a manifest abuse of that discretion. State v. Washington, 414 So.2d 313 (La.1982). Maximum sentences are to be reserved for the most egregious and blameworthy of offenders within a class. State v. Washington, 482 So.2d 118 (La.App. 4th Cir. 1986).
C.Cr.P. art. 894.1 sets forth the criteria to be used by the trial court in imposing sentence. The trial court need not articulate every circumstance cited, but the trial court must indicate that it considered those criteria in tailoring the sentence of a particular defendant to a particular crime. State v. Guiden, 399 So.2d 194 (La.1981); State v. Michaels, 516 So.2d 202 (La.App. 4th Cir.1987). Both the aggravating and the mitigating circumstances under Article 894.1 must be considered. State v. Michaels, supra. The sentencing record must reflect that the trial court considered the personal history of the defendant as well the seriousness of the crime and the defendant's past criminal history. State v. Quebedeaux, 424 So.2d 1009 (La.1982), affirmed on remand 446 So.2d 1210 (La.1984); State v. Jones, 398 So.2d 1049 (La.1981); State v. Michaels, supra. However, the failure of the trial court to enumerate specifically for the record the factors considered and the basis for the sentence as required by Article 894.1 does not render the sentence invalid. State v. Smith, 430 So.2d 31 (La.1983); State v. Talbert, 543 So.2d 585 (La.App. 4th Cir.1989). An appellate court may uphold a sentence if the record clearly illuminates the sentencing choice and reflects that the sentence is not excessive. Id.
Defendant cannot complain of the sentences for the aggravated rapes because aggravated rape carries a mandatory life sentence. R.S. 14:42. As to the thirty year maximum sentences imposed for the two aggravated burglaries, defendant raped the victims and one of the victims sustained cuts from defendant's knife. In State v. Greer, 553 So.2d 892 (La.App. 4th Cir.1989), this court upheld a thirty year sentence for aggravated burglary which involved the forcible rape of the victim. The court noted that the defendant had used deadly force upon a helpless female victim. In the present case, the thirty year sentences were not grossly disproportionate to the severity of the crimes, and the trial court did not abuse its discretion in so sentencing defendant.
As to the twelve year maximum sentences for the two counts of simple burglary of an inhabited dwelling, the record provides less support for these sentences considering the fact that neither victim was aware that her apartment had been burglarized. In State v. Denis, 524 So.2d 114 (La.App. 4th Cir.1989), writ denied 530 So.2d 564 (La.1988), this court found excessive four consecutive twelve year sentences for simple burglary of an inhabited dwelling even though the defendant had a history of committing burglaries. However, in State v. Caston, 477 *712 So.2d 868 (La.App. 4th Cir.1985), this court upheld a twelve year sentence where nothing had been taken from the burglarized apartment but where the defendant had three prior convictions, including one for burglary. In the present case, the reasons for judgment do not sufficiently articulate a basis for the sentences for the two simple burglary counts and thus those sentences should be vacated.
For the foregoing reasons, defendant's convictions are affirmed. Defendant's sentences are set aside, and the case is remanded for resentencing because the trial court failed to sufficiently state the basis for imposing consecutive sentences and for imposing maximum sentences for the two counts of simple burglary of an inhabited dwelling.
CONVICTIONS AFFIRMED, SENTENCES SET ASIDE AND REMANDED.