| JONES, Judge.

STATEMENT OF THE CASE

The defendant-appellant, Wayne H. Grant, was charged with one count of aggravated battery, a violation of La.R.S. 14:34. He was arraigned and entered a plea of not guilty. Following a jury trial, he was found guilty of second degree battery, a violation of La.R.S. 14:34.1. The trial court sentenced appellant to three years at hard labor. The court denied the defendant’s motion to reconsider the sentence and granted the motion for appeal.

STATEMENT OF THE FACTS

On December 15, 1992 New Orleans police officer James Parker and his partner responded to a call of an armed robbery in the 2400 block of General Taylor Street. Officer Parker saw the victim William Phillips. Mr. Phillips was saturated in blood from the top of his head to his waist; he did not have a shirt on. The officer called for emergency medical service and entered the victim’s *692 house. In a rear bedroom the police officers saw blood on the bed, floor, and ^furniture. The officers also observed a broken coffee table with a glass top and a broken chair. In three other rooms they saw blood as well as a trail of blood from one room to another. The officers did not see any weapons as such but did observe several household items which could be used as weapons, as a number of things had blood on them. However, in the rear bedroom where the fight occurred, the officers did not see anything which would be considered a weapon.
William Phillips testified at trial that he was a former contractor who was doing some work on his mother’s house which had burned. Mr. Phillips had hired the defendant to do electrical work. Mr. Phillips had some problems with the defendant’s performance in that it was not done on a timely basis; however, he intended to pay the defendant the balance of what was owed him.
On the night of December 15, 1992, the defendant called Mr. Phillips at about ten o’clock and asked to come over so he could give Mr. Phillips the electrical inspection from City Hall. The defendant arrived, and the two men went to the back of the house to a bedroom which Mr. Phillips used as an office. Mr. Phillips, who ha;d been drinking margueritas, offered one to the defendant, who accepted. The defendant asked Mr. Phillips for some money. Mr. Phillips responded that he only had $25 and that he needed it. He explained to the defendant that the insurance had not paid for the fire damages. As he turned to his desk to look for some papers pertaining to another job that he was offering to the defendant, the defendant hit Mr. Phillips from behind with a big ashtray. As Mr. Phillips turned, the defendant was coming at him with a captain’s chair; the victim was struck and four ribs cracked. A piece of the chair struck Mr. Phillips’s head, resulting in four broken teeth. The defendant also stabbed Mr. Phillips three times with a screwdriver.
_|jAfter the attack, the defendant made Mr. Phillips walk on his knees to the next room to get his wallet, whereupon Mr. Phillips gave the defendant $25. The defendant, who was by then armed with a pair of scissors, made Mr. Phillips crawl through the house on his knees until they reached the front door, and then the defendant left. As a result of the attack, the victim suffered injuries requiring fifty-one staples in his head and four stitches in his body.
The defendant later had two telephone conversations with Mr. Phillips, the first one occurring three days after the incident and the second one after the defendant was in jail. Mr. Phillips taped both conversations, and the tape was played to the jury.
On cross-examination, Mr. Phillips admitted that there had never been any evidence of malice or hatred from the defendant and that he had not feared for his safety prior to the attack. He also testified that he kept firearms in the house, a shotgun and two pistols, but that none of them were in the room where the fight occurred.
The defendant testified on his own behalf. He confirmed that he had worked for Mr. Phillips, that Mr. Phillips owed him approximately $300, that he had called Mr. Phillips on the night of the incident to bring him the final certificate, and that they had a drink together when he arrived at the house. The .defendant testified, however, that Mr. Phillips said he would give him a $25 check toward the balance owed, which he could not pay until he received the money from the insurance company. According to the defendant, when he was ready to go and asked for his money, Mr. Phillips became vulgar and violent. Mr. Phillips then jumped up and reached for a chair; the defendant grabbed the chair to keep from being hit. As they struggled over the chair, Mr. Phillips fell over the glass coffee table, breaking it. Mr. Phillips then grabbed a pair of scissors, and as they struggled over the scissors, the defendant pprotected himself by hitting the victim with a piece of wood from the broken chair. Finally the defendant got the scissors away from Mr. Phillips, who then grabbed a piece of glass. The defendant hit Mr. Phillips again. After fifteen or twenty minutes, the struggling between the men stopped. The victim at that time was lying in the broken glass with the defendant sitting on his chest. The defendant demanded and was given the house keys. He made Mr. Phillips *693 lie on his stomach and then fled the house. According to the defendant, he knew Mr. Phillips kept firearms in the house and had special training in the military. The defendant denied taking any money; he also denied that Mr. Phillips told him he was taping then’ phone conversations.
When questioned on cross-examination on whether he gave his version of events to the police, the defendant testified that the police did not come to him until two months later and never asked for a statement. The defendant admitted he had prior convictions for theft involving a credit card, attempted theft, and burglary; the convictions occurred over ten years previously.

ERRORS PATENT

A review of the record for errors patent reveals that there are none.

ASSIGNMENT OF ERROR NUMBER 1

In his first assignment of error the appellant argues that the evidence was insufficient to support the conviction. He relies on State v. Mussall, 523 So.2d 1305 (La.1988), in which this court found that the evidence was insufficient, under the standard enunciated in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) [1], even though the purported victim of an armed robbery testified |sas to each element of the offense, because the victim’s story was bizarre, unsupported, and self-serving. In reviewing this Court’s decision in a response to the State’s writ application contending that the appellate court substituted its factual determination of credibility for that of the trier-of-fact, the Supreme Court stated:
Applying these precepts [Jackson v. Virginia and progeny] to the present case, we conclude that any rational trier of fact, after viewing all of the evidence as favorably to the prosecution as a rational fact finder can, necessarily must have a reasonable doubt as to the • defendant’s guilt. Eye witness testimony alone is usually sufficient in the mill run of cases, but in this particular case even a reasonably pro-prosecution rational trier of fact is driven to have a reasonable doubt by the numerous eccentricities, unusual coincidences and lack of corroboration.
Mussall, supra at 1311.
The Supreme Court further noted that its decision was concerned only with whether the defendant had been convicted of armed robbery upon inadequate evidence and had “nothing to do with his credibility or whether he may be guilty of some other offense.” Mussall at 1312. The defendant had testified that the victim concocted the armed robbery story in retaliation for a marijuana deal gone bad; the defendant presented evidence to show that civil suits were filed by three other men who were involved in the drug deal. The civil suits were filed through the same attorney and on the same date as a civil suit filed by the armed robbery victim. In his trial testimony, the armed robbery victim claimed that the defendant, whom he had met briefly years before, called him unexpectedly and persuaded him to come meet him, with cash, to purchase a shrimp boat which the victim had never even seen. The victim allegedly liquidated $4,000 he had saved from working a minimum wage job, borrowed |6another $2,000 from his sister at eighteen and one-half percent interest, went to meet the defendant, who then pulled a gun and ran away with the cash. The defendant allegedly had provided the victim with his correct name and his phone number, making his identification simple. The Court also considered that there were no witnesses to the allegedly daylight robbery in the French Quarter and that the State presented no evidence to corroborate the victim’s story about the source of his funds.
The instant case is distinguishable from Mussall. First, the defendant did not deny that there was an altercation between himself and William Phillips. Both men agreed that the defendant was owed money by the victim, not the other way around, so that there was not the “revenge” motive contained in Mussall. See State v. Gibson, 550 *694 So.2d 263 (La.App. 4th Cir.1989) writ denied 586 So.2d 529 (La.1991). There was corroboration of the victim’s injuries in the form of the responding officer’s testimony regarding the victim’s physical condition, the blood throughout the house, the broken chair, and fifty-one staples used to mend the victim’s head wounds, which were identified by the victim.
Furthermore, the victim’s version of events was not eccentric or inconsistent. In many ways, it corroborated the defendant’s testimony. The victim admitted that he had been drinking and that weapons were kept in the house. .The victim testified that the defendant struck him with an ashtray, broke a chair against him resulting in four broken ribs and teeth, and caused him to fall into a glass-topped coffee table. Furthermore, the defendant stabbed him with a screwdriver three times and threatened him with a pair of scissors, indicating intent. Both men testified that the defendant would not allow the victim to stand up as he left the house. Both men also testified that the victim asked the defendant if he wanted the chain the victim was wearing |7and that the defendant replied he did not. A rational trier of fact could conclude that the victim was a credible witness and that the defendant made an unprovoked physical assault on the victim with the intent to inflict serious bodily injury.[2]
This assignment of error has no merit.

ASSIGNMENT OF ERROR NUMBER 2

In his second assignment of error, the appellant contends that his sentence is unconstitutionally excessive. He argues that under the Louisiana sentencing scheme in effect at the time of his offense, La.C.Cr.P. Art. 894.1, the trial judge is required to tailor the individual sentence imposed on the particular defendant to the particular' circumstances of the case by considering the aggravating and the mitigating circumstances listed under that article. According to the appellant, the trial court failed to articulate adequate factual considerations that would constitute particular justification for imposing this particular sentence per the dictates of Article 894.1; thus the case should be remanded for resentencing.
The State correctly notes that the Louisiana Sentencing Guidelines became effective January 1, 1992 and that the appellant was sentenced on September 2, 1993. Thus the mandate contained in the Sentencing Guidelines is applicable to this case. The State further notes that since the appellant’s Issentence of 36 months is clearly within the recommended range for a defendant with no criminal history, the sentence is presumptively correct.
The Supreme Court recently held that the Sentencing Guidelines are advisory, not mandatory. See State v. Smith, 639 So.2d 237 (La. 19.94), on rehearing. The court noted that “... while a trial judge must consider the guidelines, he has complete discretion to reject the guidelines and impose any sentence which is not constitutionally excessive, but which is within the statutory sentencing range for the crime for which the defendant has been convicted, so long as he states for the record the considerations taken into account and the factual basis for his imposition of that sentence.”
In State v. Dorthey, 623 So.2d 1276 (La.1993) the court enunciated the following standard for determining whether a sentence is constitutionally excessive:
“A punishment is constitutionally excessive if it makes no measurable contribution to acceptable goals of punishment and is nothing more than the purposeless imposition of pain and suffering and is grossly out of proportion to the severity of the crime. State v. Scott, 593 So.2d 704, 710 (La.App. 4th Cir.1991); State v. Lobato, 603 So.2d 739, 751 (La.1992).”
Dorthey, id. at 1280.
Our review of the facts of this case lead us to conclude that pursuant to this test enunci *695 ated in Dorthey, appellant’s sentence is not unconstitutionally excessive. Moreover, irrespective of whether the defendant’s sentence is analyzed under the sentencing scheme of the old Article 894.1 or the current sentencing guidelines, a review of the sentencing transcript reveals that the trial court adequately articulated sufficient reasons for imposing the three year sentence.
Prior to sentencing the appellant, the trial court ordered a presentence investigation in this matter. That report, which was sealed and made a part of |9the record, shows that the defendant had a criminal arrest record dating back to April 1975. Notable among the arrests is a 1975 first degree murder charge which was refused; a 1976 possession of heroin charge, which was also refused; a 1988 aggravated battery which was dismissed; a 1988 simple battery for which no disposition could be found; as well as a burglary which was refused in 1991.
The defendant’s criminal convictions include a felony theft by unauthorized use of a credit card in 1976. He was placed on probation, which was revoked in 1981. In 1980 the defendant was sentenced to three years inactive probation for simple burglary and possession of stolen property. After that date he had no felony convictions. The probation department recommended that the defendant not be placed on probation due to the violent nature of the instant offense and the defendant’s lengthy criminal record including two prior periods of probation.
Pursuant to La.R.S. 14:34.1 a defendant who commits the crime of second degree battery can be fined not more than two thousand dollars or imprisoned, with or without hard labor, for not more than five years, or can be subjected to both a fine and imprisonment. In the instant case, the trial court imposed a sentence of three years at hard labor. This sentence is below the recommended sentence pursuant to the guidelines. Under the Guidelines, the defendant’s criminal history index makes him a Class A offender based upon the three felony convictions which total to six points.[3] The instant offense, second degree battery, is a Level 3 offense on the sentencing grid. Therefore, the range of sentencing alternatives under the guidelines is 144-120 months of incarceration and/or 240-160 months of intermediate sanctions. In light of the | ippresentence investigation recommendation that the defendant not be placed on probation, a sentence of ten to twelve years incarceration would be the appropriate sentencing range for the defendant, assuming no mitigating or aggravating factors.[4]
The only mitigating factors which the trial court could possibly have considered was a crime-free period of ten years. This mitigating factor, which the trial court could consider in its discretion, would reduce the defendant’s criminal history index by half and make him a Class C offender. La. Sentencing Guidelines § 209(C)(17) and § 402.E. The sentencing range would then change to six to seven years, still substantially above the sentence actually imposed upon the defendant.
The defendant was given the opportunity to speak at sentencing and declined to do so. In his brief, the defendant does not refer to any mitigating factors which would warrant a further reduction.
The record does not support the appellant’s assertion that the sentence imposed by the trial judge is excessive. In fact, the trial court’s sentence is lenient as compared to the Louisiana Sentencing Guidelines recommended ranges. Further, in light of the fact that the defendant had three prior felony convictions and considering the violent nature of the instant offense, the trial judge obviously tailored the sentence to the defendant and the circumstances. The sentence imposed upon the defendant is not constitutionally excessive; consequently this assignment of error has no merit.
*696 Accordingly, we affirm the defendant’s conviction and sentence. a

AFFIRMED.

. The Jackson v. Virginia standard is, whether any rational trier of fact, viewing the evidence in the light most favorable to the prosecution, could conclude that the essential elements of the crime were proven beyond a reasonable doubt.

. The defendant was convicted of violating La. R.S. 14:34.1, second degree battery, which is a battery "committed without the consent of the victim when the offender intentionally inflicts serious bodily harm.” The statute defines serious bodily harm as "bodily injury which involves unconsciousness, extreme physical pain or protracted and obvious disfigurement, or protracted loss or impairment of the function of a bodily member, organ, or mental faculty, or substantial risk of death.” The defendant does not argue that the State did not present sufficient evidence on the issue of serious bodily harm.

. The theft conviction and the conviction for possession of stolen property are Level 5 for crime seriousness. The simple burglary is a level 4 crime. Crimes ranked in these levels are assigned two points each. La. Sentencing Guidelines §§ 402 A & D.

. The maximum sentence as a first offender for second degree battery is five years. Apparently the guidelines anticipate that a Class A offender would be subject to an habitual offender proceeding, thereby increasing the maximum potential sentence.