631 So.2d 486 (1994)
STATE of Louisiana
v.
Eugene B. LINDSEY.
No. 90-KA-1602.
Court of Appeal of Louisiana, Fourth Circuit.
January 13, 1994.
*487 Dwight Doskey, Orleans Indigent Defender Program, New Orleans, for Eugene B. Lindsey.
Harry F. Connick, Dist. Atty., Val M. Solino, Asst. Dist. Atty., New Orleans, for State of La.
Before BYRNES and JONES, JJ., and DIXON, J. Pro Tem.
*488 JOHN A. DIXON, Jr., Judge Pro Tempore.
The State indicted Eugene Lindsey for the second degree murder of Joan Julien. A jury found Lindsey guilty as charged. The trial judge sentenced Lindsey to life imprisonment at hard labor without benefit of probation, parole or suspension of sentence.
Lindsey's appeal counsel from the Orleans Indigent Defender Program filed an errors patent brief which complied with the procedures outlined by Anders v. California, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967), as interpreted by this court in State v. Benjamin, 573 So.2d 528 (La.App. 4th Cir. 1990). Later, Lindsey filed a pro se supplemental brief in which he assigns and argues ten assignments of error.

STATEMENT OF THE FACTS
On December 1, 1986, Lindsey lived at the home of his girlfriend, Zena Julien, and her family. On that date Zena took her one-year-old daughter Jovan to a clinic. Lindsey, a merchant marine, had come home after being away at sea. State witnesses testified that Lindsey was not intoxicated, and the family was not drinking that evening. After dinner, everyone was sitting around the table laughing and telling jokes when Zena told everyone about how Jovan had started a fight with another child at the clinic. Lindsey then grabbed Jovan and spanked her forcefully. Zena objected and told Lindsey so. After Lindsey grabbed her arm and twisted it, Zena then told him to leave. Lindsey went into the bedroom and began packing his things.
Zena's mother, Joan Julien, told her not to put Lindsey out and to go and talk to him. Zena went to the bedroom where he was packing, but returned to the living room because Lindsey was using vulgar language and would not talk to her. She sat down on the living room sofa and, hugging her mother, said "Mom, I think that boy is going to get the gun." Lindsey then came into the living room and pointed a gun at the two of them. They begged him not to shoot but he shot anyway, fatally wounding Joan Julien. Lindsey then put the gun into his pants and said "Now."
Zena ran to get help. Officers Edward Perkins and Sherman Joseph responded to the call, observed the victim and sent for an ambulance. Zena pointed out Lindsey, who was standing near the rear side of his car, as the person who shot her mother. Officer Joseph placed Lindsey under arrest and advised him of his rights. Lindsey told the officers, "I did shoot her and the gun is in the trunk." He then advised Officer Joseph which key opened the trunk, and the officer retrieved a .38 caliber gun from under a suitcase.
Rhonda Madine, a friend who lived in the house with the Juliens, and Zena Julien both testified relative to the events which led to the shooting, although Ms. Madine fled the living room when Lindsey came in with the gun and did not see the actual shooting. Cory Carter, the victim's 12-year-old son and Zena's younger brother, witnessed the shooting and his testimony was essentially the same as Zena's except that he could not testify as to what transpired while Zena and Lindsey were in the bedroom.
Dr. Paul McGarry performed the autopsy and testified that, although the victim lingered to the extent that the entrance and exit wounds healed, the effects of the gunshot were continuing and were the cause of death. He testified that the path of the bullet was consistent with the victim being seated and the shooter being at least two to three feet away. Officer Alvin Flint, a crime lab technician, identified photos and evidence, particularly two bullets and one spent casing found on the ground near the scene. Officer John Treadway, a firearms examiner for the crime lab, testified that the spent casing was the same type as the bullets found in the gun, but that the markings after firing one of the bullets were insufficient to determine whether the weapon retrieved from Lindsey's trunk was the one which fired the spent cartridge found on the ground.
The defense put forth a combined theory of intoxication and accidental shooting. Gregory Evans, a seaman and Lindsey's friend, testified that he and Lindsey got off a ship that morning and had each drunk a twelve-pack of beer at the union hall between noon and 4:30 or 5:00 p.m. On cross-examination, *489 Evans testified that they split a twelve-pack. Lindsey testified that he and Evans talked and drank a twelve-pack at the union hall the morning of the shooting. Lindsey further testified that he left the union hall around noon, went to his sister's house where he drank some hard liquor and beer, and went home around 3:30 p.m. Lindsey further testified that he had made two or three trips to the car with his things and that the gun went off accidentally on his way to the car when the victim's son Cory grabbed him.

ANALYSIS
We have reviewed the record for patent errors and have found that there are none.

ASSIGNMENTS ONE AND TWO
The appellant assigns error in the trial court's denial of the motion for post verdict judgment of acquittal and refusal to grant a new trial. Particularly, he claims that the jury and subsequently the trial court failed to consider the defense evidence which suggested the shooting took place while he was intoxicated, in the heat of passion, or by accident.
In evaluating the sufficiency of evidence to support a conviction, an appellate court must determine whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the defendant guilty beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Jacobs, 504 So.2d 817 (La. 1987).
The defenses raised by the appellant were both contradictory and non-persuasive. The State provided ample witnesses who testified that the appellant was not intoxicated and that the gun did not fire accidentally as a result of a collision between the appellant and the victim's twelve-year-old son. The appellant further contends that he shot the victim in the "heat of passion," which would reduce the conviction from second degree murder to manslaughter.[1]
There was testimony from State witnesses, as well as from the appellant, indicating that the appellant and the victim's daughter, Zena, had fought shortly before the fatal shot was fired. Following that altercation, the appellant went into the bedroom to pack his things and Zena went after him to try to reason with him. A reasonable jury might have thus found that the shot which killed Joan Julien, who was sitting next to Zena, was intended for Zena and was fired in the heat of passion. However, a reasonable jury could just as well have concluded that the provocation was not sufficient to deprive an average person of his self control and cool reflection, or that the appellant's blood had actually cooled or an average person's blood would have cooled while the appellant was packing, especially if the jury believed the appellant's own testimony that he was packing his things and had already made at least two trips to his car before the gun was fired. We find, therefore, that the evidence was sufficient to support the verdict. These assignments have no merit.

ASSIGNMENT THREE
The appellant argues that the trial court erred by failing to grant a mistrial when the victim's son cried on the witness stand. This argument is based on La. C.Cr.P. art. 775, providing that, upon a motion by the defense, a mistrial shall be ordered when prejudicial conduct in or outside the courtroom makes it impossible for the defendant to obtain a fair trial.
Following defense counsel's motion for a mistrial, there was an unrecorded conference at the bench. The prosecutor then resumed direct examination of the witness. While there is no indication of the extent of the witness's emotional display, the fact that the victim's twelve-year-old son was traumatized by the events of his mother's death was *490 surely no surprise to the jury. The incident was not prejudicial.

ASSIGNMENT FOUR
By this assignment the appellant claims that he was prejudiced by the admission of gruesome photographs. He claims that, because the cause of death was not in dispute, the prosecution had no reason to introduce photographs of the victim showing the gunshot wound. A review of the evidence reveals that the state did not introduce photographs of the victim. The transcript indicates that the defense counsel objected to State's exhibits three and four, which were photographs showing the proximity of blood stains to the sofa. The photographs are not especially gruesome nor unduly prejudicial.
The appellant also claims that it was error for the prosecutor to elicit testimony relative to the length of time between the shooting and the victim's death. The relevant exchange was as follows:
Q Doctor, could you tell, when you performed the autopsy, the proximity of time when the gunshot wound occurred?
A The gunshot entry and exit holes were healed by the time she died. The injury was old but the effects were continuing.
There was no objection from counsel. In any event, the medical testimony was very matter-of-fact as to the gunshot being the cause of death. The trial court permitted no testimony relative to the victim's disability as a result of the gunshot or her presumed suffering between the shooting and her death.
Neither of the issues raised by this assignment have merit.

ASSIGNMENTS FIVE, SIX AND SEVEN
Assignments five and six complain of references in opening statement and closing argument by the State relative to the appellant's having slapped his girlfriend's one-year-old child, which precipitated the immediate argument and eventual shooting. The appellant avers that these were references to another crime which, when made by a judge or district attorney within the hearing of the jury, require a mistrial if the defense so moves. La.C.Cr.P. art. 770 mandates a mistrial if the trial court or district attorney, in the presence of a jury, refers to "another crime committed or alleged to have been committed by the defendant as to which evidence is not admissible." In the instant case, the appellant's striking the child was clearly res gestae. It was therefore admissible in testimony and properly referred to in argument.
Assignment seven complains of the prosecutor's reference to the fact that the victim's son cried on the witness stand. In rebuttal argument, the prosecutor reviewed the State witnesses, eliminating each as the possible shooter, as follows:
Ms. White (the prosecutor):
You heard from relatives today, you heard from Rhonda Madine who lived there, who was staying there because Ms. Joan Julien, out of the goodness of her heart was letting her stay there. Do you thing (sic) she killed her? I don't think so. Do we have her in the room holding the gun? No. O'kay, her daughter, Zena Julien who the defense attorney, Mr. Harris has indicted on sexual innuendos, did she kill her mother? No. I can answer those questions pretty quick. Cory, the victim's eleven year old son who is not (sic) thirteen that cried on this witness stand
Mr. Harris (defense counsel):
Objection.
Ms. White:
telling you that he watched his mother murdered. Eleven years old. Did he kill his mother? No.
Although the trial court failed to respond to the defense objection at that point, no further reference was made by the prosecutor to the fact that the witness cried. While the fact of the witness's crying was not evidence and did appeal to the emotions of the jury, it was already within the knowledge of the jury.
By the seventh assignment the appellant also raises the prosecutor's reference to defense counsel's use of objections to "protect" the appellant on cross-examination. Defense counsel objected and the trial court admonished the jury as follows:
*491 The Court:
I just want to say this one thing to you, ladies and gentlemen. Either side has a right to object; that includes defense counsel and that does not constitute protecting anybody. That constitutes what he has a right and obligation to do as an attorney.
I suggest you not make any further reference to that.
The admonishment by the trial court adequately negated the suggestion by the prosecutor that defense counsel's objections to the cross-examination of the appellant were unfairly used for the appellant's protection.
None of the references in these assignments are subject to mandatory mistrial under Article 770. These assignments have no merit.

ASSIGNMENT EIGHT
The appellant contends that the trial court erred in denying the motion to suppress the confession based upon the failure of the police to advise him of his Miranda rights prior to interrogation. At the hearing on the motion to suppress Officer Sherman Joseph testified that the victim's daughter pointed out the appellant as the shooter as soon as he and his partner approached the scene. He then took control of the appellant and advised him of his rights. Officer Joseph testified that he stated the rights from memory and repeated those rights to the court. He denied having in any way coerced, threatened, forced or intimidated the appellant, or having promised him anything in exchange for a statement. Officer Joseph further testified that, after the appellant shook his head to acknowledge that he understood his rights, he began his interrogation.[2] Appellant does not rebut the State's showing that he was advised of his rights and intelligently waived them. The appellant's statement was thus properly admitted. State v. Scott, 593 So.2d 704 (La.App. 4th Cir. 1991). This assignment has no merit.

ASSIGNMENTS NINE AND TEN
By his ninth assignment the appellant contends that the trial court erred by interrupting defense counsel during contemporaneous objections and by refusing to allow counsel to state the reasons for his objections before making a ruling. Although the appellant cites numerous instances where the defense counsel objected and the trial court overruled the objection prior to the defense's statement of his reasons, in most cases the reason for the objection is obvious from the context. The defense never complained that he was not permitted to state his reasons for the record.
Appellant further avers that the trial court erred by ridiculing defense counsel before the jury for making objections to preserve errors made by the court. A review of the record reveals that the judge was evenhanded in chastising both counsel for their numerous objections. Accordingly, appellant was not prejudiced because defense counsel was not singled out. This assignment is without merit.
By the tenth assignment the appellant seeks reversal based on the cumulation of all the previously discussed errors. Because none of the preceding assignments have merit, this assignment is likewise without merit.
Accordingly, the appellant's conviction and sentence are affirmed.
AFFIRMED.
NOTES
[1] Manslaughter, under R.S. 14:31(1) is defined as: A homicide which would be murder under either Article 30 (first degree murder) or Article 30.1 (second degree murder), but the offense is committed in sudden passion or heat of blood immediately caused by provocation sufficient to deprive an average person of his self control and cool reflection. Provocation shall not reduce a homicide to manslaughter if the jury finds that the offender's blood had actually cooled, or that an average person's blood would have cooled, at the time the offense was committed.
[2] The appellant also refers to the denial of the motion to suppress evidence; however, it appears from the context of his argument that the "evidence" he is referring to is his confession.