715 So.2d 544 (1998)
STATE of Louisiana
v.
Eugene B. LINDSEY.
No. 98-K-1064.
Court of Appeal of Louisiana, Fourth Circuit.
June 3, 1998.
*545 Eugene B. Lindsey, Angola, Defendant/Relator, in pro. per.
Before ARMSTRONG, JONES and LANDRIEU, JJ.
JONES, Judge.
On October 20, 1988, relator was convicted of second degree murder. On May 11, 1989, relator was sentenced to serve life imprisonment at hard labor without benefit of parole, probation or suspension of sentence. Relator's conviction and sentence were affirmed in State v. Lindsey, 90-1602 (La.App. 4th Cir. 1/13/94), 631 So.2d 486, writ denied, 94-0612 (La.6/28/96), 675 So.2d 1106.
The facts of the case were discussed in relator's appeal opinion. Lindsey, (supra).
In this writ application relator is before this Court having filed a writ of mandamus asserting that on November 18, 1997, he filed an application for post-conviction relief in the district court and has not received a response. A review of the record shows that the application has not been filed in the district court. In his application, relator asserts that he is entitled to a new trial based on newly discovered evidence. Specifically, relator asserts that the state withheld favorable and material Brady evidence from relator thereby violating relator's constitutional right to a fair trial. Relator states that he obtained a copy of the district attorney's file on August 6, 1997, whereupon he discovered that the statements of Rhonda Madine and Zena Julien which were given to the police on March 20, 1987, contained exculpatory evidence essential to his defense of intoxication. He asserts the statements contradict the witnesses' trial testimony relative to his intoxication at the time of the shooting. He argues that if he had been provided with the statements he could have impeached the witnesses' trial testimony.
The due process clause of the Fourteenth Amendment to the United States Constitution requires the disclosure upon request of evidence which is favorable to the accused when the evidence is material to guilt or punishment. Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). This rule has been expanded to include evidence which impeaches the testimony of a witness where the reliability or credibility of the witness may be determinative of guilt or innocence. Giglio v. U.S., 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972). The Brady rule is based on due process of law. "[T]he prosecutor is not required to deliver his entire file to defense counsel, but only to disclose evidence favorable to the accused that, if suppressed, would deprive the defendant of a fair trial, that is, evidence favorable to the *546 defendant which is material to guilt or punishment." State v. Rosiere, 488 So.2d 965, 970 (La.1986). The test for determining materiality was first established in United States v. Bagley, 473 U.S. 667, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985). However, in Kyles v. Whitley, 514 U.S. 419, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995), the Supreme Court recently outlined the considerations for determining whether allegedly-suppressed evidence is material. These considerations were summarized in a recent decision by the Louisiana Supreme Court, State v. Marshall, 94-0461 (La.9/5/95), 660 So.2d 819:
The issue is whether the exculpatory evidence is material under the Brady-Bagley-Kyles line of cases. Evidence is material only if it is reasonably probable that the result of the proceeding would have been different had the evidence been disclosed to the defense. A reasonable probability is one which is sufficient to undermine confidence in the outcome. [United States v. Bagley, 473 U.S. 667, 682, 105 S.Ct. 3375, 3383, 87 L.Ed.2d 481 (1985) ]. [The reviewing court] must provide a cumulative evaluation of the suppressed evidence, keeping in mind that [the defendant] does not have to show that, with the addition of the suppressed evidence, his trial would have resulted in acquittal or that there would be an insufficiency of the evidence to support a conviction. [The defendant] need only show that "disclosure of the suppressed evidence to competent counsel would have made a different result reasonably probable." Kyles, 115 S.Ct. at 1569.
State v. Marshall, 94-0461, pp. 19-20, 660 So.2d at 826.
In support of his claim, relator has attached copies of the statements of the two witnesses, a copy of defense counsel's motion for production, inspection and copying which was filed on September 15, 1987, and a copy of the state's answers which were filed in October, 1987. In his motion, defense counsel specifically asked for any written statements containing favorable and material evidence from any person with knowledge of the crime. The state answered "Not entitled". A review of the witnesses' statements shows that both witnesses told the police that relator was intoxicated at the time of the shooting.
In her statement, Ms. Rhonda Madine stated that relator came home drunk, and that he started cursing and carrying on. She described him as acting very unusual. She also stated that Ms. Zena Julien told him not to curse in front of her mother and that if he was going to continue to curse he could just leave. Relator began packing his belongings and putting them in the trunk of the car. The victim told Zena to tell relator not to put his clothes in the car because he was drunk and would get into an accident. Relator entered the house with a gun. Ms. Madine stated that she grabbed her baby and ran and stood by the doorway between the living room and the kitchen. She did not see relator shoot the gun but heard the victim ask relator not to shoot. Then she heard the gunshot.
In her statement, Ms. Julien stated that she arrived home around 5:00 p.m., and relator arrived a short time after. She stated that when she told him that her baby had gotten into a fight with another child at the clinic, relator became angry and "wacked her on her butt". She stated that she pushed relator and grabbed the baby. Relator became more angry and cursed and twisted her arm. She told relator to leave the house. Relator began to pack his clothes and started bringing his belongings out to the car. The victim, Ms. Julien's mother, told her not to allow relator to leave because he was drunk and would get into an accident. Relator entered the home with a gun and shot the victim in the chest. When questioned further, Ms. Julien stated that when relator came home he was drunk and she could smell liquor on his breath. She described relator as so drunk that he was "stumbling" around and when she "tapped" him he "fell over".
Where the circumstances indicate that an intoxicated condition has precluded the presence of a specific criminal intent, this fact constitutes a defense to the prosecution for the crime. La.R.S. 14:15. Criminal intent may be inferred from the circumstances of the crime and the defendant's activities. *547 State v. Graham, 420 So.2d 1126 (La.1982), State v. Vanvorst, 505 So.2d 123, 128 (La. App. 4th Cir.1987), writ denied, 533 So.2d 12 (La.1988).
Second degree murder is the killing of a human being when the offender has the specific intent to kill or to inflict great bodily harm. La.R.S. 14:30.1(A)(1).
La.R.S. 14:31(A)(1) provides:
A homicide which would be murder under either Article 30 (first degree murder) or Article 30.1 (second degree murder), but the offense is committed in sudden passion or heat of blood immediately caused by provocation sufficient to deprive an average person of his self-control and cool reflection. Provocation shall not reduce a homicide to manslaughter if the jury finds that the offender's blood had actually cooled, or that an average person's blood would have cooled, at the time the offense was committed.
Because the factors, "sudden passion" and "heat of blood", are not elements of the crime, the state does not bear the burden of proof. Also, there is no requirement that the factors be affirmatively established by the defendant. Instead, the jury is free to infer the mitigating circumstances from the evidence. State v. Lombard, 486 So.2d 106, 110-111 (La.1986), State v. Landry, 499 So.2d 1320, (La.App. 4th Cir.1986).
In the instant case, relator asserted the defense of intoxication. However, the jury only heard relator's testimony and that of his friend that relator was intoxicated on the day of the shooting. The jury did not have the benefit of knowing that two of the state's witnesses, Zena Julien and Rhonda Madine, both gave statements to the police that relator was intoxicated when he shot the victim. In addition, this Court in the appeal opinion indicated that none of the state's witnesses testified at trial that relator was intoxicated when he shot the victim. Thus, the only evidence of the mitigating circumstances of intoxication for the jury to consider came from the defense. If the statements made to the police had been made available prior to trial, relator may have been able to impeach these witnesses. If the jury had been apprised of the prior statements of Zena Julien and Rhonda Madine, the jury may well have returned a lesser verdict.
Because the relator appears to make a prima facie showing that he is entitled to post conviction relief, the district court is ordered to hold an evidentiary hearing on relator's claim that the State withheld Brady material within 60 days of this order. The District Court is further ordered to show compliance by forwarding to this Court a copy of the minute entry evidencing the court's judgment.