737 So.2d 231 (1999)
STATE of Louisiana
v.
Oswalt GUY.
No. 97-KA-1387.
Court of Appeal of Louisiana, Fourth Circuit.
May 19, 1999.
*233 Guy H. Lillian III, New Orleans, Louisiana, Counsel for Defendant/Appellant.
Harry F. Connick, District Attorney, John Jerry Glas, Assistant District Attorney, New Orleans, Louisiana, Counsel for Plaintiff/Appellee.
Court composed of Judge JOAN BERNARD ARMSTRONG, Judge JAMES F. McKAY III, Judge MICHAEL E. KIRBY.
KIRBY, Judge.
Defendant Oswalt Guy was charged with armed robbery, a violation of La. R.S. 14:64.[1] Defendant was arraigned on July 7, 1995, at which time he pleaded not guilty. On October 20, 1995, the trial court found probable cause. Following trial by a twelve-person jury, defendant was found guilty as charged. Defendant filed a motion for a new trial, which was denied on September 25, 1996. On December 2, 1996, defendant was sentenced to ninety-nine years at hard labor without benefit of parole, probation or suspension of sentence. The State filed a bill of information charging defendant as a habitual offender.[2] On January 1, 1997, the trial court adjudicated defendant a second felony habitual offender, set aside the original sentence, and resentenced defendant to forty-nine and one-half years at hard labor without benefit of parole, probation or suspension of sentence under La. R.S. 15:529.1. Defendant filed motions for post-verdict judgment of acquittal and new trial, which were denied. From this conviction and sentence defendant appeals, raising assignments of error both through appellate counsel and pro se.

FACTS:
New Orleans Police Officer Michael Nieves testified that, at approximately 3:00 a.m. on the morning of April 17, 1995, he took a report of an armed robbery from Ms. Lisa McLendon. McLendon informed *234 the officer that, sometime after 6 p.m. on April 16, she had been robbed at the Chevron Gas Station located at 3134 Elysian Fields Avenue. The victim reported that the robber took her rental car, a 1995 Ford Taurus, and her purse, which was in the vehicle. McLendon reported the crime from her home.
New Orleans Police Officer Troy Anthony Williams testified that he arrested defendant on April 25, 1995. Defendant was riding in the front passenger seat of a stolen white Ford when Officer Williams and his partner began chasing it. The vehicle finally crashed and the three occupants, including defendant, fled. Another officer caught defendant in the neighborhood, after Officer Williams' partner broadcast a description of the suspects. Officer Williams identified defendant at the scene as having been in the vehicle at the time the chase began and as having fled from the vehicle after it crashed.
New Orleans Police Officer Travis McCabe testified that he and his partner were cruising two blocks from the crash scene when he noticed defendant slowly running or jogging. When defendant spotted the officers in their marked police unit, he stopped running and began walking. Officer McCabe testified that defendant "was in a panic as if he had ran." Officer McCabe said Officer Williams subsequently identified defendant as one of the subjects being sought.
New Orleans Police Officer Brian Elsensohn testified that he and his partner stopped defendant after defendant slowed from a jog to a walk when he spotted them. He said Officer Williams later identified defendant as the subject they were seeking.
New Orleans Police Detective Lionell Adams presented McLendon, the victim of the armed robbery, with two photographic lineups. He said she was unable to make an identification in one lineup but that, in the second, she identified the defendant.[3] McLendon informed the detective that defendant, who had a mustache in the photographs, had been clean-shaven at the time of the robbery.
Lisa McLendon identified defendant at trial as the person who robbed her at knifepoint on April 16, 1995, Easter Sunday. She said the robber took her white Ford Taurus and her purse containing her telephone, credit cards and keys. She said the robbery occurred between 6:00 p.m. and 6:30 p.m. at the Chevron Gas Station at the intersection of Interstate 610 and Elysian Fields Avenue. She went inside the gas station convenience store and called police; while McLendon was waiting for police to arrive, two youths stole four cartons of cigarettes and beer from the store. She said at that point she decided to go home, where she notified police. Officer Michael Nieves eventually came to her home around 3:00 a.m. the next morning. McLendon testified that Det. Adams subsequently showed her two photographic lineups. She said she was unable to identify anyone in the first lineup, but identified defendant in the second lineup, testifying that she had noticed defendant's particular facial features when he turned to look at her after she asked him during the robbery if she could have her purse. She said he had no facial hair at the time of the robbery. McLendon said the identification procedure took place approximately ten days after the robbery and that defendant had a slight mustache in the photograph she identified. She said she positively identified him during the identification procedure. She was asked if she told the investigating officer that the man who robbed her had any gold teeth. She said the man who robbed her did not have *235 gold teeth. At that point, defense counsel asked defendant to stand up and smile, and elicited from McLendon the admission that defendant did in fact have a gold tooth. On re-direct examination, McLendon stated that defendant did not smile at her like that during the robbery.
Augustine Guy, defendant's mother, testified that defendant was at home on the evening of April 16, 1995, at approximately 6:30 p.m. She said her son had had a gold tooth since before he went into jail, and that he was in jail about six years. Mrs. Guy also said her son had facial hair on April 16, 1995. At one point, Mrs. Guy confirmed that it was about five blocks from her residence to the location of the gas station where the robbery occurred, but later said she was sure it was more than five blocks. She also said at one point that it was two miles away. Mrs. Guy admitted she would help her son get out of trouble if she could, but said she would not lie for him.
Dave Coubaraous testified that he had known defendant for about fifteen years, and that he had been with defendant at defendant's mother's house on April 16, 1995. Coubaraous left at approximately 6:20 p.m. and returned around 7:00 p.m. He said defendant was there when he left and was there when he returned. Coubaraous stated that defendant had a mustache on April 16, 1995. He also testified defendant had had the gold tooth for about six years.
Edmond Don Wilson, a state probation officer, a decorated former police officer, and the top graduate in his class at the Federal Law Enforcement Training Academy, said he arrived at Mrs. Guy's residence on April 16, 1995, at approximately 5:45 p.m. He said came to visit his grandfather, Mrs. Guy's father. Wilson said he met defendant, his relative, for the first time in his life, and they talked a long time. Wilson said defendant was present until the time he left, between 8:00 and 8:15 p.m. Wilson stated that defendant was out of his sight for no more than ten minutes, and that he conversed with defendant even during that brief period. Wilson said Mrs. Guy's residence was a few miles from the intersection where the robbery occurred.

ERRORS PATENT
A review of the record reveals no errors patent.

ASSIGNMENT OF ERROR NO. 1
In this assignment of error, defendant argues that the trial court violated his constitutional right to confrontation by "not allowing" him to be present at the preliminary examination "scheduled May 15, 1995."
The record does not contain a transcript of a preliminary examination.[4] Nor does the record contain a motion or request for a preliminary examination by either the State or the defense.[5] Therefore, under La.C.Cr.P. art. 292, the trial court was not mandated to conduct one.
There is no record defendant requested a preliminary examination and no indication that one was ever conducted. If a preliminary examination was conducted, defendant's presence was not mandatory. La.C.Cr.P. art. 834(1). Defendant has failed to even allege any prejudice resulting from either the failure to conduct a preliminary examination or failure to have him present for such an examination, should there have been one. Accordingly, this assignment of error has no merit.

ASSIGNMENT OF ERROR NO. 2
In this second assignment of error, defendant claims the trial court erred in *236 denying his motion for a new trial which, he claims, was "primarily based" on the ineffectiveness of trial counsel. This is inaccurate, as the motion for new trial contained in the record is based on the ground that the verdict was contrary to the law and evidence because of the alleged questionable identification of defendant by the victim. We are therefore treating this assignment as one which alleges ineffective assistance of counsel.
Generally, the issue of ineffective assistance of counsel is a matter more properly addressed in an application for post conviction relief, filed in the trial court where a full evidentiary hearing can be conducted. State v. Prudholm, 446 So.2d 729 (La.1984); State v. Johnson, 557 So.2d 1030 (La.App. 4th Cir.1990). Only if the record discloses sufficient evidence to rule on the merits of the claim do the interests of judicial economy justify consideration of the issues on appeal. State v. Seiss, 428 So.2d 444 (La.1983); State v. Landry, 499 So.2d 1320 (La.App. 4th Cir. 1986).
A defendant's claim of ineffective assistance of counsel is to be assessed by a two-part test: the defendant must show that counsel's performance was deficient and that the deficiency prejudiced defendant. Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); State v. Fuller, 454 So.2d 119 (La.1984). Counsel's performance is ineffective when it can be shown that he made errors so serious that counsel was not functioning as the counsel guaranteed to the defendant by the Sixth Amendment. Strickland, supra at 686, 104 S.Ct. at 2064. Counsel's deficient performance will have prejudiced the defendant if he shows that the errors were so serious as to deprive him of a fair trial. To carry his burden, the defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, supra at 693, 104 S.Ct. at 2068. The defendant must make both showings to prove that counsel was so ineffective as to require reversal. State v. Sparrow, 612 So.2d 191, 199 (La.App. 4th Cir.1992).
Defendant claims counsel was deficient in failing to adequately attack the identification made by the victim. However, the record shows that trial counsel thoroughly cross-examined the witnesses regarding the identification of defendant by the victim. Trial counsel brought out that McLendon told police that her assailant had no facial hair, and introduced testimony from defendant's family members that defendant had a mustache at the time. Furthermore, trial counsel elicited from Det. Adams that he compiled the photographic lineup of person with mustaches because defendant had a "light" mustache when he was arrested ten days after the robbery. Det. Adams and McLendon were thoroughly questioned concerning any suggestiveness and the certainty of the victim's identification of defendant in the photo lineup. On cross-examination, trial counsel got the victim to testify that the man who robbed her did not have a gold tooth or teeth, and then got defendant to smile and display his gold tooth in open court.
Appellate counsel argues that trial counsel should have "objected to the introduction of the identifications," meaning, the introductions of the two photographic lineups from which the victim made her out-of-court identification of defendant. Appellate counsel submits that, if trial counsel had objected to the introduction of this evidence, there was a reasonable probability that the result of the proceeding would have been different. Thus, counsel argues, counsel was ineffective. This argument has no merit. There was no evidence the out-of-court identification procedure was in any way suggestive, and thus, the photographs were admissible. See State v. Hunter, 92-2535, pp. 4-5 (La.App. 4 Cir. 4/134/95), 654 So.2d 781, 783-84, *237 writ denied, 95-1217 (La.10/6/95), 661 So.2d 464. Absent any showing that the identifications could have been ruled inadmissible, trial counsel's failure to object to their admission cannot be construed as ineffective.
More substantially, appellate counsel states that, after defendant's conviction, a law clerk in his office learned from Chevron that no reports had ever been filed indicating that an armed robbery had occurred on April 16, 1995 at the Chevron gas station in question. Furthermore, appellate counsel asserts that Chevron had no reports stating that any shoplifting incident occurred at the station soon thereafter as McLendon had testified. Attached to his brief are letters from Chevron to this effect. However, the original letters to Chevron are not included, leaving the answers given out of context.
Appellate counsel also makes representations that there were no incidents on Chevron videotapes from that date, and implies that if there had been, Chevron would have retained the video segments. This matter was not cited as a basis for defendant's motion for a new trial, which was filed and denied approximately one year prior to the date of these letters. Appellate counsel argues that trial counsel was ineffective for failing to discover this information and use it to defend defendant.
These letters were not introduced into evidence. Such allegations of ineffective assistance of counsel based on evidence discovered after trial and conviction are best resolved by application for post conviction relief, where a full evidentiary hearing can be held, rather than by an assignment of error on appeal. See State v. Sepcich, 473 So.2d 380, 388 (La.App. 5 Cir.1985). The defendant's right to assert ineffective assistance of counsel, as it relates to this evidence only, is therefore reserved. In all other respects, this assignment of error has no merit.

PRO SE ASSIGNMENT OF ERROR NO. 1
In this assignment of error, defendant argues that the evidence was insufficient to convict him.
This court set out the standard for reviewing convictions for sufficiency of the evidence in State v. Egana, 97-0318, pp. 5-6 (La.App. 4 Cir. 12/3/97), 703 So.2d 223, 227-28:
In evaluating whether evidence is constitutionally sufficient to support a conviction, an appellate court must determine whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of act could have found the defendant guilty beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Green, 588 So.2d 757 (La.App. 4 Cir.1991). However, the reviewing court may not disregard this duty simply because the record contains evidence that tends to support each fact necessary to constitute the crime. State v. Mussall, 523 So.2d 1305 (La.1988). The reviewing court must consider the record as a whole since that is what a rational trier of fact would do. If rational triers of fact could disagree as to the interpretation of the evidence, the rational trier's view of all the evidence most favorable to the prosecution must be adopted. The fact finder's discretion will be impinged upon only to the extent necessary to guarantee the fundamental protection of due process of law. Mussall; Green; supra. "[A] reviewing court is not called upon to decide whether it believes the witnesses or whether the conviction is contrary to the weight of the evidence." State v. Smith, 600 So.2d 1319 (La.1992) at 1324.
In addition, when circumstantial evidence forms the basis of the conviction, such evidence must consist of proof of collateral facts and circumstances from which the existence of the main fact may be inferred according to reason and common experience. State v. Shapiro, *238 431 So.2d 372 (La.1982). The elements must be proven such that every reasonable hypothesis of innocence is excluded. La. R.S. 15:438. This is not a separate test from Jackson v. Virginia, supra, but rather an evidentiary guideline to facilitate appellate review of whether a rational juror could have found a defendant guilty beyond a reasonable doubt. State v. Wright, 445 So.2d 1198 (La. 1984). All evidence, direct and circumstantial, must meet the Jackson reasonable doubt standard. State v. Jacobs, 504 So.2d 817 (La.1987).
The elements of the offense of armed robbery are: (1) the taking; (2) of anything of value; (3) from a person or in the immediate control of another; (4) by the use of force or intimidation; (5) while armed with a dangerous weapon. La. R.S. 14:64; State v. Banks, 96-652, 96-653, p. 12 (La.App. 5 Cir. 1/15/97), 694 So.2d 401, 410.
Defendant attacks his identification by McLendon, pointing out the inconsistencies previously discussed. At trial, defendant presented several alibi witnesses; McLendon stated that she was certain of her identification of defendant. The jury obviously chose to believe the testimony of the victim, McLendon, over that of Wilson, Carr, and Mrs. Guy, defendant's relative, his friend, and his mother, respectively. An appellate court should not evaluate the credibility of witnesses and overturn the trial court on its factual determination of guilt, absent more compelling factors than are present in this case. State v. Richardson, 425 So.2d 1228, 1232 (La.1983); State v. Styles, 96-897, p. 23 (La.App. 5 Cir. 3/25/97), 692 So.2d 1222, 1233, writ denied, 97-1069 (La.10/13/97), 703 So.2d 609.
Reviewing all of the evidence in a light most favorable to the prosecution, it appears that any rational trier of fact could have found all of the essential elements of the offense of armed robbery present beyond a reasonable doubt.
There is no merit to this assignment of error.

PRO SE ASSIGNMENT OF ERROR NO. 2
In this assignment of error, defendant clams the trial court erred in adjudicating him a second-felony habitual offender.
Defendant claims the State failed to present "a perfect transcript" of the taking of the prior guilty plea, reflecting a colloquy between the trial court and defendant wherein he was informed of and specifically waived his right to trial by jury, his privilege against self-incrimination, and his right to confront his accusers, citing State v. Abbott, 92-2731 (La.App. 4 Cir. 2/25/94), 634 So.2d 911.
In Abbott, this court quoted the Louisiana Supreme Court's holding in State v. Shelton, 621 So.2d 769 (La.1993), wherein the court held that, if defendant denies the allegations in the habitual offender bill of information, the State has the burden of proving the existence of the prior guilty plea and that defendant was represented by counsel when the plea was taken. Only if defendant then produces "some affirmative evidence showing an infringement of his rights or a procedural irregularity in the taking of the plea" is the State required to introduce such a "perfect transcript" of the taking of the guilty plea. However, even the failure to introduce such a perfect transcript is not fatal to the State's case. If the State introduces anything less than a perfect transcript, the trial court must then weigh the evidence submitted by the State and defendant to determine whether the State has met its burden of proof. Abbott, 92-2731 at pp. 7-8, 634 So.2d at 915, citing State v. Shelton, 621 So.2d 769.
Further, La. R.S. 15:529.1(D)(1)(b) mandates that, if a defendant clams that any conviction is invalid, he must file a written response to the habitual offender bill of information, setting forth his claim and the factual basis *239 therefor. "Any challenge to a previous conviction or adjudication of delinquency which is not made before sentence is imposed may not thereafter be raised to attack the sentence." There is no indication defendant filed such a written objection setting forth his claim that the prior conviction was invalid and the factual basis therefor. Accordingly, defendant cannot now raise the validity of the conviction.[6]

PRO SE ASSIGNMENT OF ERROR NO. 3
In this assignment of error, defendant claims that the State failed to disclose exculpatory evidence in its possession.
In State v. Lindsey, 98-1064 (La.App. 4 Cir. 6/3/98), 715 So.2d 544, this court set forth the applicable law pertaining to the State's disclosure of exculpatory evidence, or Brady material, as follows:
The due process clause of the Fourteenth Amendment to the United States Constitution requires the disclosure upon request of evidence which is favorable to the accused when the evidence is material to guilt or punishment. Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). This rule has been expanded to include evidence which impeaches the testimony of a witness where the reliability or credibility of the witness may be determinative of guilt or innocence. Giglio v. U.S., 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972). The Brady rule is based on due process of law. "[T]he prosecutor is not required to deliver his entire file to defense counsel, but only to disclose evidence favorable to the accused that, if suppressed, would deprive the defendant of a fair trial, that is, evidence favorable to the defendant which is material to guilt or punishment." State v. Rosiere, 488 So.2d 965, 970 (La.1986). The test for determining materiality was first established in United States v. Bagley, 473 U.S. 667, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985). However, in Kyles v. Whitley, 514 U.S. 419, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995), the Supreme Court recently outlined the considerations for determining whether allegedly-suppressed evidence is material. These considerations were summarized in a recent decision by the Louisiana Supreme Court, State v. Marshall, 94-0461 (La.9/5/95), 660 So.2d 819:
The issue is whether the exculpatory evidence is material under the Brady-Bagley-Kyles line of cases. Evidence is material only if it is reasonably probable that the result of the proceeding would have been different had the evidence been disclosed to the defense. A reasonable probability is one which is sufficient to undermine confidence in the outcome. [United States v. Bagley, 473 U.S. 667, 682, 105 S.Ct. 3375, 3383, 87 L.Ed.2d 481 (1985)]. [The reviewing court] must provide a cumulative evaluation of the suppressed evidence, keeping in mind that [the defendant] does not have to show that, with the addition of the suppressed evidence, his trial would have resulted in acquittal or that there would be an insufficiency of the evidence to support a conviction. [The defendant] need only show that "disclosure of the suppressed evidence to competent counsel would have made a different result reasonably probable." Kyles, 115 S.Ct. at 1569.

State v. Marshall, 94-0461, pp. 19-20, 660 So.2d at 826.
98-1064 at pp. 2-3, 715 So.2d at 545-546.
Defendant claims that the supplemental police report, which was not turned over to him, contains "rebuttal evidence" that he could have used to raise a doubt concerning the testimony of Officer Williams and *240 Officer McCabe as to the descriptions of two of the three individuals who fled from a vehicle. Officer Williams was involved in the pursuit of the vehicle defendant was in, which crashed, while Officer McCabe stopped defendant blocks away and returned him to the crash scene where he was identified by Officer Williams.
Defendant notes that the supplemental police report reflects that two of the three suspects chased from the crash scene wore multi-color shirts and dark pants. Defendant does not point to any discrepancy in either Officer Williams' or Officer McCabe's testimony regarding the descriptions of the suspects. Defendant was tried and convicted for an armed robbery which occurred nine days prior to the night of his arrest, following the car chase and crash. The supplemental police report is not clearly exculpatory, and defendant has not shown how it is exculpatory. Moreover, even assuming the report was exculpatory, in light of the evidence as a whole defendant has not shown that "disclosure of the suppressed evidence to competent counsel would have made a different result reasonably probable." Kyles, 115 S.Ct. at 1569.
There is no merit to this assignment of error.

PRO SE ASSIGNMENT OF ERROR NO. 4
Defendant's fourth assignment of error alleges that the trial court erred in instructing the jury as to the introduction of inadmissible evidence. This apparently is a reference to the trial court instructing the jury to disregard defendant's arrest for possession of the stolen automobile. However, defendant failed to brief or discuss this assignment of error. Therefore, this assignment of error should be considered abandoned. Uniform Rules of Louisiana Courts of Appeal, Rule 2-12.4; State v. Fleming, 95-2327, p. 4, n. 1 (La. App. 4 Cir. 6/26/96), 676 So.2d 1141, 1143, n. 1, writ denied, 96-1939 (La.12/13/96), 692 So.2d 369; State v. Hawkins, 90-1235, p. 9, n. 1 (La.App. 4 Cir. 9/15/95), 667 So.2d 1070, 1078, n. 1, affirmed, 96-0766 (La.1/14/97), 688 So.2d 473.
Moreover, the record does not reflect an objection by defense counsel to the instruction. The failure to contemporaneously object to an alleged error relating to the giving or failure to give jury instructions precludes review of that error. La. C.Cr.P. art. 841(A); State v. Smith, 94-0621, p. 12 (La.App. 4 Cir. 12/15/94), 647 So.2d 1321, 1328, reversed on other grounds, 95-0061 (La.7/2/96), 676 So.2d 1068; State v. Davis, 93-0663, p. 7 (La. App. 4 Cir. 2/25/94), 633 So.2d 822, 826. Accordingly, defendant cannot raise this error on appeal.
We reserve to defendant his right to raise the issue of ineffective assistance of counsel on application for post conviction relief on the sole ground that counsel was deficient in failing to discover and present at trial evidence pertaining to the lack of any reports or videotapes in Chevron's possession supporting the victim's version of the events surrounding the robbery at the Chevron station. In all other respects, the judgment of the trial court is affirmed.
AFFIRMED.
NOTES
[1] While the docket master and the minute entry from October 20, 1995 indicate the motion to suppress the identification was denied, the transcript reflects that the trial court did not rule on that motion. It appears the trial court deferred its ruling at the request of the defendant. There is no indication the trial court ever ruled on the motion to suppress the identification. Defendant does not raise that as an assignment of error.
[2] The bill was based on his 1989 conviction for an armed robbery in which defendant and an accomplice robbed a woman at gun point of her car and purse.
[3] At the motion to suppress hearing, Det. Adams testified that two photo lineups were conducted because "there were two individuals who were arrested in the victims [sic] car." The lineup from which the victim was unable to make an identification apparently contained the photograph of the other individual who had been arrested after the vehicle chase and crash.
[4] Counsel for defendant claims that he requested a transcript of the purported preliminary examination but never received it. In all probability, this is because no preliminary examination was ever conducted.
[5] On October 20, 1995, the court held a motion hearing at which defendant was present. At this hearing, the victim identified defendant, and the court found probable cause for the arrest of defendant.
[6] Moreover, a review of the record suggests that the State met its burden of proof under La. R.S. 15:529.1.