STATE OF LOUISIANA      *      NO. 2019-KA-0255

VERSUS      *

          COURT OF APPEAL

WAYNE JACKSON      *

          FOURTH CIRCUIT

     *

          STATE OF LOUISIANA

* * * * * * *

APPEAL FROM
ST. BERNARD 34TH JUDICIAL DISTRICT COURT
NO. 15-00817, DIVISION "C"
Honorable Kim C. Jones, Judge
* * * * * *
**Judge Roland L. Belsome**
* * * * * *
(Court composed of Judge Roland L. Belsome, Judge Regina Bartholomew-
Woods, Judge Dale N. Atkins)

Perry M. Nicosia
District Attorney
Josephine P. Heller
Assistant District Attorney
DISTRICT ATTORNEY'S OFFICE ST. BERNARD PARISH
1101 W. Saint Bernard Hwy.
Chalmette, LA 70043

         COUNSEL FOR STATE OF LOUISIANA/APPELLEE

Bruce G. Whittaker
LOUISIANA APPELLATE PROJECT
1215 Prytania Street, Suite 332
New Orleans, LA 70130

         COUNSEL FOR DEFENDANT/APPELLANT

         **AFFIRMED**

         **OCTOBER 16, 2019**

The defendant, Wayne Jackson, challenges his conviction and sentence. For the reasons that follow, the conviction and sentence are affirmed.

*Facts*

On December 5, 2014, Nathanial Hebert and his wife, Heather, were living in an apartment on Lyndell Drive in Chalmette, Louisiana. They were getting ready to go out when they heard a lot of noise from the upstairs neighbors. He called the police because the noise was very loud. Mr. Hebert walked out of his apartment and saw his neighbors' children standing outside. The children said that their father had hurt their mother. Mr. Hebert went to the apartment and saw the victim in the living room. Mr. Hebert called 911 for help. He stated that the victim was bleeding from her neck, face and arms and she was gasping for breath.

Deputy Joshua English responded to a domestic call involving a potential stabbing on December 5, 2014. When the officer arrived on the scene, he observed a woman in the living room who appeared to have been stabbed multiple times. When Deputy English entered the kitchen, he saw a man, later identified as the defendant, who also appeared to have been stabbed. Khalil Sudlow, the victim's

1

son, identified the defendant as the person who stabbed his mother several times after an argument.

## *Procedural History*

On January 20, 2015, the defendant, Wayne Jackson, was charged by bill of information with the attempted second degree murder of Ameisha Jackson. The defendant pled not guilty at his arraignment. Subsequent to his not guilty plea, counsel for the defendant made an oral motion for a sanity commission, which the trial court granted. After a sanity commission hearing on August 13, 2015, the defendant was found competent to proceed. On October 20, 2015, the defendant withdrew his not guilty plea and pled guilty to the offense. Then, on April 19, 2016, the defendant filed a motion to withdraw his guilty plea. The trial court granted the motion on the same date. In October of 2017, the defendant filed a motion to change his plea to not guilty and not guilty by reason of insanity. The trial court granted the motion and ordered a sanity commission. Approximately seven months later, the defendant and the State of Louisiana received the experts' reports on the defendant's sanity at the time of the offense.

After a three-day jury trial, the jury found the defendant guilty as charged. The defendant subsequently filed motions in arrest of judgment and for a new trial. After a hearing on October 16, 2018, the trial court denied the motions. At the sentencing hearing, the trial court sentenced the defendant to serve thirty-five years at hard labor, with credit for time served. The defendant orally filed a motion for appeal, which was granted by the trial court.

## *Errors Patent*

A review of the record for errors patent reveals that the trial court failed to state that the defendant's sentence was to be served without benefit of parole,

probation, or suspension of sentence. La. R.S. 14: 30.1. and La. R.S. 14:27 require that a person convicted of attempted second degree murder serve the sentence imposed without benefit of parole, probation or suspension of sentence. The trial court failed to impose these restrictions at the sentencing hearing held on December 18, 2018. These restrictions are automatically contained in the sentence whether or not imposed by the sentencing court. La. R.S. 15:301.1(A); *State v. Dominick*, 2013-0121, p. 5-6 (La. App. 4 Cir. 11/20/13), 129 So.3d 782, 787. Accordingly, those errors patent are self-correcting. *See State v. Klein,* 2018-0022, p.12 (La. App. 4 Cir. 8/22/18), 252 So.3d 973, 981.

## *Assignments of Error*

On appeal, the defendant challenges his conviction on the grounds that the State failed to prove the necessary elements for attempted second degree murder. More specifically, the defendant claims that there was insufficient evidence to prove he had the intent to kill the victim. Therefore, he maintains that the evidence was only sufficient to support a verdict of attempted manslaughter. Alternatively, if his conviction is affirmed, he claims his sentence of thirty-five years is excessive.

## *Conviction*

The defendant's challenge to the sufficiency of the evidence focuses on the State's failure to prove the intent to kill, which is required for attempted second degree murder. He argues that because the State did not prove the element of intent, the jury should have returned a verdict of attempted manslaughter.

It is well settled that *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), is the standard under which this court evaluates whether evidence is constitutionally sufficient to support a conviction. Reviewing the

record under *Jackson* requires an appellate court to determine whether the evidence, viewed in the light most favorable to the prosecution, was sufficient for any rational trier of fact to have found the defendant guilty beyond a reasonable doubt. *State v. Watkins*, 2013-1248, p. 13 (La. App. 4 Cir. 8/6/14), 146 So. 3d 294, 303.

To obtain a conviction for attempted second degree murder the State must prove the defendant: (1) intended to kill the victim; and (2) committed an overt act tending toward the accomplishment of the victim's death. *State ex rel. G.B.,* 2007-1577, p. 4 (La. App. 4 Cir. 5/14/08), 985 So.2d 828, 830; *State v. Bishop*, 2001-2548, p. 4 (La.1/14/03), 835 So.2d 434, 437. A conviction for attempted second degree murder requires proof that the offender "had the specific intent to kill and committed an act tending toward the accomplishment of that goal." *State v. Sullivan*, 97-1037, p. 20 (La. App. 4 Cir. 2/24/99), 729 So.2d 1101, 1111. "Specific criminal intent is that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act." La. R.S. 14:10(1). "Specific intent may be inferred from the circumstances surrounding the offense and the conduct of the defendant." *State v. Caliste*, 2012-0533, p.9 (La. App. 4 Cir. 9/4/13), 125 So.3d 8, 14; Bis*hop, supra*.

In contrast, manslaughter is defined, in pertinent part, by La. R.S. 14:31 as "[a] homicide which would be murder under either Article 30 (first degree murder) or Article 30.1 (second degree murder), but the offense is committed in sudden passion or heat of blood immediately caused by provocation sufficient to deprive an average person of his self-control and cool reflection." The Supreme Court has explained the relationship between the two separate offenses of homicide and manslaughter as follows:

4

It is the presence of "sudden passion" and "heat of blood" that distinguishes manslaughter from murder. This court has repeatedly stated, however, that "sudden passion" and "heat of blood" are not elements of the offense of manslaughter. Rather, they are mitigatory factors in the nature of a defense which exhibit a degree of culpability less than that present when the homicide is committed in the absence of these factors. Because they are mitigatory factors, a defendant who establishes by a preponderance of the evidence that he acted in "sudden passion" or "heat of blood" is entitled to a verdict of manslaughter.

*State v. Snyder*, 98-1078, p. 4 (La. 4/14/99), 750 So.2d 832, 837-838 (internal citations omitted).

"Heat of blood" or "sudden passion" is defined in the jurisprudence as provocation sufficient to deprive an average person of his self-control and cool reflection. *State v. Miller*, 98-642, p. 10 (La. App. 3 Cir. 10/28/98), 720 So.2d 829, 834. However, such provocation shall not reduce a homicide to manslaughter if the jury finds that the offender's blood had actually cooled or that an average person's blood would have cooled at the time the offense was committed. *State v. Collor*, 99-0175, p. 10 (La. App. 4 Cir. 4/26/00), 762 So.2d 96, 102. When reviewing the argument that evidence was produced that the offender committed the crime in sudden passion or heat of blood, the *Jackson* standard of review must be employed to determine whether a rational trier of fact, viewing the evidence in a light most favorable to the prosecution, could have found that the mitigating factors were not established by a preponderance of the evidence. *Snyder*, 98-1078, pp. 4-5, 750 So.2d at 838. However, defendant need not affirmatively establish the factors; the jury is free to infer the mitigating circumstances from the evidence. *State v. Robinson*, 2001-1305, p. 11 (La. App. 4 Cir. 4/17/02), 820 So.2d 571, 579; *State v. Lindsey*, 98-1064, p. 5 (La. App. 4 Cir. 6/3/98), 715 So.2d 544, 547.

In a recent case, *State v. Bias*, 2018-268 (La. App. 3 Cir. 2/6/19), 265 So.3d 821, the defendant's conviction for attempted second degree murder was affirmed.

5

The facts in B*ias*, were that the victim and Ladray Bias, Jr., had a dating relationship until June 2016. Mr. Bias sought to re-establish the relationship calling the victim numerous times, but the victim refused to speak with him. On the night of July 29, 2016, the victim was at a friend's house for dinner. Mr. Bias came to the house on three separate occasions. On each visit to the house, Mr. Bias showed increasingly aggressive behavior toward the victim, and the police were called after each incident. On the second visit to the house, Mr. Bias was physically abusive hitting the victim several times in the face, and the victim fought back. *Bias*, 2018-0268, p. 9, 265 So.3d at 826. The third time Mr. Bias returned to the house, he busted through the door, ran to the kitchen and grabbed a knife from a drawer, yelling continually that he was going to kill the victim, calling her a "bitch and ho." *Id*. The victim tried to run but he caught her. After he stabbed the victim four times, he ran out of the house. The victim went in and out of consciousness as her friend wrapped a towel around her wounds. Someone called 911, and emergency medical personnel and the police came. *Bias*, 2018-268, pp. 9-10, 265 So.2d at 827. The Third Circuit concluded that the evidence in that case was sufficient to establish the elements of attempted second degree murder.

In the case at bar, Mr. and Ms. Jackson were having marital difficulties. The testimony established that he had been sleeping on the couch for months before this incident and Ms. Jackson wanted him out of the apartment and he did not want to leave. On the evening of the stabbing, the defendant attempted to have sexual relations with the victim and was rejected. He then threatened Ms. Jackson and told her that she would not be going to work and to call her supervisor. Shortly thereafter, Ms. Jackson's son, Khalil Sudlow, testified that while he was on the couch watching television with his younger siblings his step-father pushed his

6

mom through the doorway and into the living room where he proceeded to stab her repeatedly. While stabbing his wife, the defendant told Khalil not to call the police. At trial, the jury heard medical testimony regarding Ms. Jackson's thirteen stab wounds, which caused her to have two blood transfusions and spend two weeks in the hospital's intensive care unit. They also heard from the victim, Ms. Jackson, who testified that those injuries left her partially paralyzed due to spinal cord damage, her jugular vein had been cut and she had to have plastic surgery on both sides of her face. Ms. Jackson's testimony also described the defendant as a habitual abuser. The defendant admitted that he stabbed the victim, and the victim and her son, Khalil, testified that the defendant continuously stabbed the victim while she was unconscious and defenseless.

Given the record before this Court and the *Jackson* standard of review, we find any rational juror could have found that Mr. Jackson intended on killing Ms. Jackson, and that there were no mitigating factors to warrant a finding of manslaughter.

### *Sentence*

The defendant argues that the sentence of thirty-five years at hard labor imposed by the trial court is unconstitutionally excessive. While the defendant did not file a written motion to reconsider sentence, the defendant, through counsel, objected to the sentence imposed at the sentencing hearing. The trial court noted the defendant's objection, but maintained the sentence imposed.

In the present matter, prior to sentencing the defendant, the trial court referenced the victim impact testimony given by the victim, as well as, the trial testimony and a presentence investigative report that had been prepared. The trial court stated that the defendant stabbed the victim numerous times in front of their

7

children, causing not only physical injury to the victim but emotional and psychological injury to the children. The trial court recognized that the victim would have died from her injuries if she had not received immediate medical help from her neighbor. The court noted the victim had stab wounds to her facial area, neck, upper torso and arm. One of the stab wounds was to the victim's artery in her neck, which caused a large amount of blood loss and was life threatening. The trial court discussed the severity of the injuries and the extensive medical treatment the victim received. The court also noted that the victim has suffered permanent debilitating injuries, which affect her ability to work and her and her children's quality of life. The victim and all her children suffer from mental health issues as a result of the incident and receive mental health counseling.

In light of the facts of this case, it cannot be said that the trial court abused its discretion in sentencing the defendant to thirty-five years at hard labor. The sentence is not unconstitutionally excessive considering the defendant's lack of remorse, the extent and seriousness of the injuries sustained by the victim, and the fact that the defendant stabbed the victim in front of their children, causing the children emotional and psychological injury.

### *Capacity to Proceed to Trial*

In this assignment, the defendant argues that the trial court erred in allowing the matter to proceed to trial without having resolved the issue of his capacity to proceed. A review of the appellate record reveals that a sanity commission was requested and granted on June 23, 2015. A sanity hearing was conducted on August 13, 2015, and the defendant was found to have the capacity to proceed. On October 12, 2015, the defendant withdrew his not guilty plea and pled guilty as charged. On April 4, 2016, the defendant filed a motion to withdraw the guilty

8

plea, which was granted by the trial court. Then, on October 10, 2017, the defendant filed a motion to change his plea to not guilty and not guilty by reason of insanity (NGBRI). The trial court granted the motion and ordered a sanity hearing to determine the defendant's sanity as it related to his NGBRI plea. A hearing was conducted on May 1, 2018, at which defense counsel acknowledged he had received the doctors' reports on the defendant's NGBRI plea and was ready for trial. Trial occurred on June 5-7, 2018.

La. C.Cr.P. art. 642 provides:

> The defendant's mental incapacity to proceed may be raised at any time by the defense, the district attorney, or the court. When the question of the defendant's mental incapacity to proceed is raised, there shall be no further steps in the criminal prosecution, except the institution of prosecution, until the defendant is found to have the mental capacity to proceed.

Generally, a person who suffers from a mental disease or defect which renders him incapable of understanding the nature and object of the proceedings against him, of consulting with counsel, and of assisting in preparing and conducting his defense, may not be subjected to trial. La. C.Cr.P. arts. 641-649.1; *State v. Gibson*, 2008-0741, p.5 (La. 11/10/08), 993 So.2d 1193, 1196; *State v. Rogers,* 419 So.2d 840, 843 (La. 1982)(citing *Drope v. Missouri,* 420 U.S. 162, 95 S.Ct. 896, 43 L.Ed.2d 103 (1975); *State v. Bennett,* 345 So.2d 1129 (La. 1977)).

In the present matter, the defendant's capacity to proceed was determined at a sanity hearing held on August 13, 2015. At that time, the trial court heard testimony from the medical experts and determined that the defendant had the capacity to proceed. Subsequently on October 10, 2017, the defendant changed his plea to not guilty and not guilty by reason of insanity. As a result, the trial court ordered the medical experts to prepare reports on whether the defendant was insane

9

at the time of the offense. At a hearing on May 1, 2018, the defendant and the State received the experts' reports concerning the defendant's sanity at the time of the offense. The defendant acknowledged receipt of the reports and announced his readiness for trial.

Seeking medical expert testimony on the sanity of a defendant at the time of the offense falls within the purview of La. C.Cr.P. art. 650, which provides:

> When a defendant enters a combined plea of "not guilty and not guilty by reason of insanity," the court may appoint a sanity commission as provided in Article 644 to make an examination as to the defendant's mental condition at the time of the offense. The court may also order the commission to make an examination as to the defendant's present mental capacity to proceed. Mental examinations and reports under this article shall be conducted and filed in conformity with Articles 644 through 646.

A defendant is not entitled of right to an examination and evaluation of his sanity at the time of an offense. *State v. Buras*, 439 So.2d 1187, 1189 (La. App. 4 Cir. 1983). The appointment of a sanity commission to inquire into the mental condition of the accused is addressed to the sound discretion of the trial judge, and his ruling will not be disturbed on appeal absent a clear showing of abuse of discretion. *State v. Wilkerson,* 403 So.2d 652 (La.1981); *Buras, supra.*

In *State v. Wry*, 591 So.2d 774 (La. App. 2nd Cir. 1991), the defendant entered a plea of not guilty and not guilty by reason of insanity. A sanity commission was appointed by the trial court, pursuant to La. C.Cr.P. article 650. The doctors examined the defendant and filed their reports. Once the reports were filed, the defendant submitted the issues of insanity at the time of the offense and capacity to proceed to the trial court on the basis of the reports. The matter then proceeded to trial. The Second Circuit found that the defendant waived his right to contradictory hearing on the issues. The court concluded that there was no showing that the defendant's waiver was not knowingly and voluntarily made. The

court stated "we do not find any prohibition in the law to a waiver of such a hearing and a stipulation to submit the competency issue to the trial court based on the doctors' reports. Louisiana courts have consistently upheld stipulations entered into by a defendant, his defense counsel and the state." *Wry*, 591 So.2d at 780.

In the present case, the hearing transcript of May 1, 2018, reveals that the defendant and the State received the reports from the medical experts concerning the defendant's sanity at the time of the offense, and thereafter, the defendant announced his readiness for trial. In doing so, the defendant stipulated to the experts' reports and waived his right to a hearing. There is no evidence in the appellate record to suggest that the waiver was not knowingly and voluntarily made. Moreover, the district court had previously found the defendant competent to stand trial on August 3, 2015.

## *Conclusion*

For the reasons discussed, Wayne Jackson's conviction and sentence are affirmed.

**AFFIRMED**