L STEWART, J.
Kevin Cain, a/k/a Kevin Ross, the defendant herein, was found guilty as charged of one count of armed robbery, a violation of La. R.S. 14:64. The district court imposed a sentence of 50 years at hard labor without benefit of probation, parole, or suspension of sentence. The sole assignment of error on appeal is whether the evidence was sufficient to support the jury’s verdict of guilty. Specifically, the defendant argues that the evidence was not sufficient to prove that he was the person who perpetrated the armed robbery. Finding no merit in the assignment of error, we affirm.
FACTS
Around 12:30 p.m., on May 29, 2000, a man entered Floyd’s Handy Pak in Caldwell Parish. After getting some beer out of the cooler in the back of the store, the man approached the cashier, Amanda Floyd, and asked her to check the cooler for more of a particular brand of beer. The man then followed Floyd to the cooler, pulled out a knife from his front pocket, and pointed the knife toward her. The man guided Floyd back to the counter and had her get money out of the cash register. He then directed her back to the cooler where he reached from behind her and stabbed her in the stomach. When the man tried to cut her throat, Floyd began to struggle with him. After struggling for a couple of minutes, the man finally gave up the fight. He left the store and left Floyd behind in the cooler.
As Floyd was trying to get out of the cooler, she saw Barbara Gaylor enter the store. Gaylor and her husband, Jimmy Gaylor, drove up to the store for gas and cold drinks just as a man holding a package of beer was leaving the store. The man spoke to Gaylor and indicated that the cashier |¡yras in the bathroom. After Gaylor entered the store, she found Floyd in the cooler and let her out. Floyd told Gaylor that she had been robbed and stabbed. Gaylor called 911 for assistance. Floyd was transported to the hospital and required surgery to repair her liver.
According to Jerry Douglas Powe, Jr., a deputy sheriff in Caldwell Parish, authorities were advised to look for a black male suspect dressed in short black trousers, a red t-shirt, and a dark-colored cap. The suspect was said to be heading northeast of the store on foot and carrying a twelve pack of beer. At about 12:40 p.m., two state troopers stopped the defendant just north of the store. The defendant was seen by them exiting the gates of Mixon Oil, a nearby business. The defendant told the troopers that he was at Mixon Oil to inquire about a job prospect. His attire, long dark pants and boots, did not fit *349 the description of the clothes allegedly worn by the perpetrator of the armed robbery. The defendant was allowed to leave. The troopers looked around Mixon Oil for five or ten minutes. According to Trooper John Wyles, the office was closed and nobody was there. Neither the beer nor the knife was ever found.
Later that afternoon, Deputy Powe received an anonymous call from a “concerned citizen” who stated that “Cain” committed the armed robbery and that he was at “Sweet Honey’s house.” Deputy Powe along with another deputy went to Sweet Honey’s house and learned from her that Cain, who was also known as Kevin Ross, had just left on foot. The defendant was then found nearby and identified by Trooper Wyles as the same man that had been stopped earlier near the scene of the crime. After |san interview, the defendant was arrested. Cash totaling $71 was seized from the defendant. Additionally, the defendant’s boots were seized in order to compare them to casts taken of footprints found in an area of freshly tilled soil northeast of Floyd’s Handy Pak.
The next day, after preparing a photographic line-up consisting of six photographs, Deputy Powe met with Floyd. Floyd immediately identified the defendant in the line-up. The picture used had been taken after the defendant’s arrest.
At trial, both Floyd and Gaylor positively identified the defendant as the man from the store. The jury found the defendant guilty as charged by a vote of 11 to 1. This appeal based on the sufficiency of the evidence followed.
DISCUSSION
In asserting that the evidence was insufficient to support the guilty verdict, the defendant concedes that an armed robbery occurred. However, the defendant argues that the evidence was insufficient to connect him with the crime or to identify him as the perpetrator.
We note that the record does not reflect that a motion for post-verdict judgment of acquittal was filed pursuant to La.C.Cr.P. art. 821. Nevertheless, this court will consider sufficiency arguments in the absence of such a motion. See State v. Green, 28,994 (La.App.2d Cir.2/26/97), 691 So.2d 1273.
The standard of appellate review for a sufficiency of the evidence claim is whether, after viewing the evidence in the light most favorable to |4the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Bosley, 29,253 (La.App.2d Cir.4/2/97), 691 So.2d 347, writ denied, 97-1203 (La.10/17/97), 701 So.2d 1333.
The Jackson standard is applicable in cases involving both direct and circumstantial evidence. An appellate court reviewing the sufficiency of the evidence in such cases must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution. When the direct evidence is thus viewed, the facts established by the direct evidence and inferred from the circumstances established by that evidence must be sufficient for a rational trier of fact to conclude beyond a reasonable doubt that the defendant was guilty of every essential element of the crime. State v. Sutton, 436 So.2d 471 (La.1983); State v. Owens, 30,903 (La.App.2d Cir.9/25/98), 719 So.2d 610, writ denied, 98-2723 (La.2/5/99), 737 So.2d 747.
To convict a defendant of armed robbery, the state is required to prove (1) a taking, (2) of anything of value, (3) from a person or in the immediate control of another, (4) by use of force or intimidation, *350 and (5) while armed with a dangerous weapon. La. R.S. 14:64; State v. Guy, 97-1387 (La.App. 4th Cir.5/19/99), 737 So.2d 231, writ denied, 99-1982 (La.1/7/00), 752 So.2d 175. Because the defendant concedes that an armed robbery occurred, the only issue is whether the defendant was the perpetrator. Where the key issue is not whether the crime had been | ¡¡committed, but whether the defendant was the person who committed the crime, application of the Jackson standard requires the state to negate any reasonable probability of misidentification in order to carry its burden of proof. State v. Smith, 430 So.2d 31 (La.1983), citing State v. Brady, 414 So.2d 364 (La.1982) and State v. Long, 408 So.2d 1221 (La.1982).
The U.S. Supreme Court has approved several factors for evaluating the reliability of an identification. The factors are: (1) the opportunity of the witness to view the criminal at the time of the crime; (2) the witness’s degree of attention; (3) the accuracy of the victim’s prior description of the criminal; (4) the level of certainty demonstrated at the confrontation; and (5) the time between the crime and the confrontation. See Manson v. Brathwaite, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977); Neil v. Biggers, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972); State v. Davis, 27,961 (La.App.2d Cir.4/8/96), 672 So.2d 428, writ denied, 97-0383 (La.10/31/97), 703 So.2d 12.
The defendant was placed at the scene of the crime and identified by two witnesses. Barbara Gaylor identified the defendant as the man she encountered exiting Floyd’s Handy Pak around 12:30 p.m. on the afternoon of May 29, 2000. The man said something to her, and she turned to face him. He told her “she’s in the bathroom.” Gaylor testified that she looked at the man’s face as he talked. He was a black male. Gaylor recalled that he smiled and had a pleasant look. She noted that he had a thin mustache and distinctive lips that came to a point on each side at the top. His hair was arranged in “ringlets of sort.” She described the man as tall with a sturdy | fibuild. Gaylor believed that he was wearing a dark colored ball cap that was possibly blue or burgundy, a red or wine colored t-shirt, and baggy cropped pants that may have come just below the knee. On cross-examination, she testified that the pants worn by the man may have been blue jeans. While testifying, Gaylor identified the defendant as the man she encountered at Floyd’s Handy Pak. However, she noted that the defendant appeared to have put on some weight and to have styled his hair a bit differently at the time of trial. Gaylor testified that the identification was based on her encounter with him on the day of the robbery. Gaylor also testified that she had no doubt of her ability to identify the defendant and that she was “definitely sure” that the defendant was the man who walked out of the store and spoke to her.
Amanda Floyd, the victim of the armed robbery, identified the defendant as the perpetrator of the crime. Floyd testified that her encounter with the defendant lasted ten minutes or a little longer. She spoke with the defendant during the robbery and looked at him as he ascertained whether she was alone and directed her actions at knife-point before stabbing her. She described the man as having “poofy” hair and a thin mustache. She believed that he was wearing a red t-shirt and black or navy short pants. She did not recall him wearing a cap. Floyd identified the defendant in a photographic line-up as the perpetrator of the crime. This identification occurred on the day after the robbery. When questioned about the accuracy of her identification of the defendant as the man who committed the robbery, Floyd *351 answered, “There is absolutely no doubt in my mind.”
|7The identification of the defendant by Gaylor places him at the scene of the crime moments before Gaylor discovered Floyd in the cooler. Gaylor’s testimony indicates that she paid particular attention to the man who spoke to her at Floyd’s Handy Pak. Although her identification of the defendant at trial occurred almost six months after her encounter with him, Gay-lor was positive about her identification and did not waver. Floyd’s identification establishes that the defendant committed the armed robbery. Floyd had an opportunity to view the defendant at the time of the crime. She conversed with the defendant and looked him in the face. She no doubt paid close attention to him, especially once he pulled out the knife. Floyd identified him as the perpetrator the day after the robbery and again at trial. The identification was made both times with certainty and without hesitation.
The record shows that there was some discrepancy regarding the description of clothing worn by the perpetrator of the crime and the clothing worn by the defendant when he was detained by two state troopers in the vicinity of the crime scene soon after the crime occurred. When stopped by the state troopers, the defendant was wearing dark-colored clothing and long pants. Because the pants were not short, the officers did not believe that he matched the description of the suspect. However, we note that both Gaylor’s and Floyd’s description place the defendant in dark colored clothing. Moreover, Jimmy Gaylor, described the man exiting Floyd’s Handy Pak as wearing dark blue or black clothes. Inaccurate clothing descriptions are not at all uncommon. In this instance, while some minor |Rdescriptive inaccuracy may exist, the inaccuracy is not so great as to call in to question the otherwise positive identifications made by Gaylor and Floyd. Their identifications reach the level of reliability when evaluated under the factors approved by the U.S. Supreme Court and suffice to establish the defendant’s guilt beyond a reasonable doubt.
Other evidence also supports the jury’s verdict. For instance, the anonymous tip that “Cain” committed the robbery and that he was with “Sweet Honey” led the investigating officers directly back to the defendant. The boots seized from the defendant bore some similarities to the footprints left behind near the crime scene. Michael C. Stelly of the North Louisiana Crime Lab testified that the comparison of the casts taken from the footprints with the boots seized from the defendant revealed the boots and footprints to be the same size, same brand, and same tread design. However, there were insufficient individual markings from wear and tear to allow Stelly to positively identify the footprints as having been made by the defendant.
In addition, there was testimony placing the defendant at the scene of the crime and armed with a knife just prior to its occurrence. Ronald Simmons, who knew the defendant as “Cain” prior to the incident at issue, testified that he met the defendant on the morning of May 29, 2000, while riding around and drinking beer. He gave the defendant a ride to Hilltop Mobil to get some beer, and he drove the defendant to a location where the defendant sold a cell phone. The men then purchased more beer and went to Simmons’ home. Simmons observed the defendant in the kitchen taking a | sknife from a drawer. Simmons described the knife as having a silver blade and black handle. He also recalled the defendant saying that he knew where he could get some money. Simmons testified that the defendant had him drive him to Floyd’s Handy Pak. Once the defendant exited the vehicle, Simmons left. The time was approximately 12:30 *352 p.m. Although the defense attempted to discredit Simmons’ testimony using a prior statement given to police, a comparison of the statement to Simmons’ testimony shows that the essential facts are the same.
The evidence shows that Simmons drove the defendant to the scene of the crime and dropped him off moments before the crime occurred. The defendant was armed with a knife. The defendant entered the store and perpetrated the armed robbery as described by Floyd, who readily identified the defendant from a photograph the day after the crime and again in person at trial. The defendant was observed leaving the crime scene by Gaylor, who also identified him with certainty at trial. The defendant was detained minutes after the robbery in the vicinity of the crime scene by two state troopers. There was no corroboration for his claim to the troopers that he had been inquiring about a job on Memorial Day at a business which appeared to be closed. Footprints bearing similarities to the defendant’s footwear were found in freshly tilled soil near the scene of the crime. Finally, an anonymous tip led directly to the defendant.
Viewing the totality of the evidence in the light most favorable to the prosecution, we find it sufficient to prove beyond a reasonable doubt that the defendant, while armed with a dangerous weapon and with the use of Imforce or intimidation, took money from the victim. As such, we find no merit in the defendant’s assignment of error.
CONCLUSION
For the reasons assigned, we affirm the defendant’s conviction and sentence.
AFFIRMED.